[No. 30348. Department One. April 6, 1948.]

DOROTHY ROLETTO et al., Appellants, v. DEPARTMENT STORES GARAGE COMPANY, Respondent.[1]

[1]Reported in 191 P. (2d) 875.

440

*Warner, Pierce & Peden,* for appellants.

*Kumm & Hatch,* for respondent.

SIMPSON, J.—The plaintiffs instituted this action for the purpose of recovering compensation for injuries to plaintiff Dorothy Roletto, sustained while on the property operated by defendant corporation.

Plaintiffs alleged that defendant corporation operated a public garage in which automobiles were parked, and that Friday, August 9, 1946, defendant employed Larry G. Mc-Cready to drive the cars into and out of the garage, as the public demanded. On the day mentioned, at about 5:45 p. m., as plaintiff Dorothy Roletto was entering a car which had been parked in the garage, another car driven by

McCready was negligently backed against the car being entered by plaintiff, with the result that both her legs were severely injured. McCready was at the time working for defendant within the course of his employment. The negligence charged was in not keeping a sharp lookout to the rear, and in failing to observe the car being entered by plaintiff.

In its answer, defendant denied the allegations relating to its employment of McCready at the time of the accident, and the charges of negligence.

A trial was had to the court, sitting with a jury, upon the issues presented. The jury returned a verdict in favor of plaintiffs. Defendant thereafter presented to the court a motion for judgment notwithstanding the verdict or, in the alternative, for new trial. The court granted the motion for judgment notwithstanding the verdict and dismissed the action. The order provided further that, in the event the judgment n. o. v. be reversed, that defendant be granted a new trial.

On appeal, plaintiffs assign as error the action of the trial court in granting the motions just mentioned.

Sometime during the afternoon of August 9, 1946, Mrs. Roletto drove into the city of Seattle with Mr. and Mrs. Klarich. The car was placed in respondent's garage. Returning to the garage after five o'clock, Mr. Klarich asked an attendant to bring the car to the place where it could be received by him. The attendant brought the car to the entrance of the garage, and Mr. and Mrs. Klarich entered it, as did the child of Mrs. Roletto. As Mrs. Roletto started to get into the automobile, she was hit by the rear end of a car driven by McCready. The force of the car pushed her violently against that of the one belonging to Mr. Klarich, and she was severely injured.

Mrs. Klarich testified that she and appellant Dorothy Roletto returned to the garage "a little bit after five." Mr. Klarich testified that they got back to the garage about a quarter after five, and that Mrs. Roletto was injured at seventeen or eighteen minutes after five. Appellant, Dorothy Roletto, testified that after she was injured, she

waited twenty-five or thirty minutes for the ambulance; that the accident occurred before 5:30 in the evening. At a pretrial examination she had stated that the accident occurred at 5:45.

The evidence shows without contradiction that Larry McCready was a part-time parking attendant in respondent's garage, and that he had worked there for respondent before the war. When he was discharged from the navy, he started to school and was given after-school employment by respondent. McCready was paid by the hour.

On the day of the accident, he came to work in the clothing which he had worn to school, and then changed into his working clothes at the garage. On the day of the accident, McCready had finished his work, changed his clothes, punched a time clock in the presence of David W. Davis, manager of the garage, and then laid his work clothes on the office gate. After that he went downstairs and drove his own car up to the gasoline pump, there he put some gas in it, stepped into the station and charged the gasoline to himself; then he picked up his clothes, got in his car, and prepared to go home. While backing from the pump, he injured Mrs. Roletto. The record discloses that McCready was allowed to park his car in the garage, and that he would have subjected himself to discharge if he had serviced his car during his working hours.

■ The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury, since such person is alone liable. To this general rule the case of master and servant is an exception, and the negligence of the servant, while acting within the scope of his employment, is imputable to the master. But, to bring a case within this exception, it is necessary to show that the relation of master and servant exists between the person at fault and the one sought to be charged for the result of a wrong; and the relation must exist at the time, and in respect to the particular transaction out of which the injury arises.

Outside the scope of his employment, the servant is as much a stranger to his master as any third person, and an

act of the servant not done in the execution of services for which he was engaged cannot be regarded as the act of the master. If the servant steps aside from his master's business for some purpose wholly disconnected with his employment, the relation of master and servant is suspended. The act of the servant during such interval is not to be charged to his master. 39 C. J. 129.

■ The burden was upon appellants to prove their case by showing the negligence of the driver of the car that injured Mrs. Roletto, that the driver of that car was employed by respondent, and that, at the time of the injury, he was acting within the scope of his employment. All these facts are admitted except the last one, so our only problem is to determine whether there was sufficient evidence to go to the jury on the question of whether McCready was acting within the scope of his employment at the time of the accident.

■ "The test for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment or by the specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interests." *McGrail v. Department of Labor & Industries*, 190 Wash. 272, 67 P. (2d) 851.

Accord: *Young v. Department of Labor & Industries*, 200 Wash. 138, 93 P. (2d) 337, 123 A. L. R. 1171; *D'Amico v. Conguista*, 24 Wn. (2d) 674, 167 P. (2d) 157; *Purinton v. Department of Labor & Industries*, 25 Wn. (2d) 364, 170 P. (2d) 656; *Mutti v. Boeing Aircraft Co.*, 25 Wn. (2d) 871, 172 P. (2d) 249; *McCarty v. King County Medical Service Corp.*, 26 Wn. (2d) 660, 175 P. (2d) 653.

In the *D'Amico* case, this court announced the following rule which must be applied in ascertaining at what time and under what condition an individual may be said to be in the course of his employment:

"Under our workmen's compensation act, definite conditions must exist at the time of an injury in order to entitle one to the benefits of the act. First, the relationship of em-

ployer and employee must exist between the injured person and his employer (except in some cases where the injured person is an independent contractor); second, the injured person must be in the course of his employment; third, that the employee must be in the actual performance of the duties required by the contract of employment."

The above statement of the rule was announced in a case concerning our workmen's compensation act. However, that rule is applicable in cases involving the general question of employment, such as is presented in the case at bar. It is quite evident that there was no direct evidence that McCready was working for respondent at the time of the injury.

In order to sustain their position that respondent was liable, appellants called to their aid a presumption often applied in cases involving questions of the character here presented. The presumption is that a servant is acting within the scope of his employment, where the acts relied upon are apparently performed for the master, and upon the master's premises. The presumption, however, does not have the force of evidence, but merely gives rise to a procedural rule—that is to say, the presumption itself does not shift the ultimate burden of proof from the plaintiff to the defendant, but simply casts upon the defendant the burden of going forward with evidence to meet the presumption, and, in this process, carries the case beyond the granting of a nonsuit at that point. *Bradley v. Savidge, Inc.*, 13 Wn. (2d) 28, 123 P. (2d) 780. As we have pointed out, respondent went forward with the evidence and met the presumption by evidence that was unimpeached, clear, and convincing, to the effect that McCready was not in the course of his employment at the time the accident occurred.

Appellants press upon us the theory that the evidence given by the driver of the car in which Mrs. Roletto had journeyed to Seattle, was sufficient to contradict or impeach the testimony given by respondent's witnesses, which was to the effect that McCready was upon affairs of his own at the time of the accident. We cannot agree with this contention, for it still remains as undisputed that, at

the time McCready backed his car and injured Mrs. Roletto, he had discarded his working clothes, he had punched the time clock, and he was driving his own car upon his own business.

The trial court ruled correctly when it granted the motion for judgment notwithstanding the verdict.

The judgment will be affirmed.

MALLERY, C. J., SCHWELLENBACH, and HILL, JJ., concur.

MILLARD, J. (dissenting)—In passing upon a motion for judgment notwithstanding the verdict, all competent evidence in the record which is favorable to the party against whom the motion is directed must be regarded as true and that party must be given the benefit of every favorable inference which may reasonably be drawn from such evidence. Where the minds of reasonable men may differ, the question should be submitted to the jury, and if, when so considered, the court finds there is substantial evidence to sustain the verdict, the judgment must be affirmed. The foregoing is merely a restatement of a long-established and universally-recognized rule which hardly needs citation of sustaining authority.

The constitution (Art. I, § 21, state const.) guarantees that the "right of trial by jury shall remain inviolate," but the legislature may provide for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

The word "inviolate," as used in the above-quoted constitutional provision, means freedom from substantial impairment by courts, as well as by legislatures. The word "inviolate," as used in the above-quoted section, does not prohibit modification of the details of administration which does not affect enjoyment of the right of trial by jury, a right sometimes figuratively designated as "the jewel of Anglo-Saxon jurisprudence."

A departure from the rule invoked constitutes a change in policy which is destructive of the jury system, a change which we, as Americans, should be slow to sanction.

Under the above-quoted section of our constitution, the courts cannot legitimately trench on the province of the jury upon questions of fact. It is the function of the jury, not the court, to settle disputed issues of fact. Courts should be on the alert to safeguard, instead of rendering nugatory, the constitutional right of trial by jury.

"There is justification for a dissenting opinion only if it is right, but it is of no avail if it fails to challenge attention, provoke inquiry, and eventually lead to ascertainment of the truth. Whether the writer is correct in his conclusions with respect to which the majority and the undersigned differ, will be answered now and in the future by a most charitable profession. It is hoped that what is said herein may so interest the profession that ultimately we may again adopt and follow the rule which the minority believes is violated by the opinion of the majority." *Hynek v. Seattle*, 7 Wn. (2d) 386, 421, 111 P. (2d) 247. (Dissenting opinion.)

It is undisputed that McCready was an employee of respondent and that, at the time of the accident out of which this action arose, he was performing a duty as an employee: driving an automobile to the gas pump, placing gas into the tank of the automobile, and driving the automobile away from the gas pump. If the accident occurred prior to 5:30 p. m., as witnesses on behalf of appellants testified, clearly McCready was on duty, and he was then acting within the course of his employment. If, as McCready testified, the accident occurred after 5:30 p. m., when he was not on duty, the employee was not acting within the course of his employment at the time of the accident. That question of fact was one for the determination of the jury. The verdict reflects the jury's acceptance of the testimony of appellants' witnesses as true.

The judgment should be reversed.

---

May 14, 1948. Petition for rehearing denied.