HOWELL EDUCATION ASSOCIATION, MEA/NEA
v HOWELL BOARD OF EDUCATION

Docket No. 288977. Submitted January 5, 2010, at Lansing. Decided
    January 26, 2010, at 9:05 a.m.

The Howell Education Association, MEA/NEA, Doug Norton, Jeff
    Hughey, Johnson McDowell, and Barbara Cameron brought an
    action in the Livingston Circuit Court, Stanley J. Latreille, J.,
    against the Howell Board of Education and the Howell Public
    Schools, seeking to prevent the disclosure, under the Freedom of
    Information Act (FOIA), MCL 15.231 *et seq.*, to intervening
    defendant/counter-plaintiff Chetly Zarko of e-mail sent to and
    from Howell Public Schools teachers Norton, Hughey, and McDow-
    ell (who are also members of and officials for the Howell Education
    Association, MEA/NEA) and e-mail sent to and from Cameron (a
    MEA representative) to and from Norton, McDowell, and Hughey.
    Plaintiffs sought a declaratory judgment providing, in part, that
    the personal e-mail of the individual plaintiffs and their e-mail
    pertaining to union business were not public records subject to
    disclosure under FOIA. Defendants contended that the e-mails
    were public records because, when they were sent or received on
    defendants' e-mail system, a copy of each e-mail was automatically
    retained in the system's memory. Defendants also maintained that
    the individual plaintiffs' alleged violation of defendants' accept-
    able use policy barring personal use of the e-mail system rendered
    the personal e-mails public records subject to FOIA. The trial court
    granted summary disposition in favor of defendants. Plaintiffs
    appealed, specifically limiting their appeal to whether the trial
    court properly concluded that all e-mails generated through de-
    fendants' e-mail system that are retained or stored by defendants
    are public records subject to FOIA.

The Court of Appeals *held*:

1. Mere possession of a record by a public body does not render
the record a public document. Rather, the use or retention of the
document must be in the performance of an official function.

2. For the e-mails at issue to be public records, they must have
been stored or retained by defendants in the performance of an
official function. There is nothing about the personal e-mail, given

that by its very definition it has nothing to do with the operation of the schools, that indicates that it is required for the operation of an educational institution.

3. Unofficial private writings belonging solely to an individual should not be subject to public disclosure merely because the individual is an employee of a public body. It was not the intent of the Legislature when it passed FOIA to render all personal e-mail sent by governmental employees while at work subject to public release upon request.

4. Personal e-mails are not rendered public records under FOIA merely by use of a public body's computer system to send or receive those e-mails or by an automatic back-up system that causes the public body to retain those e-mails.

5. Although defendants' acceptable use policy notified computer users that personal e-mail may be looked at by school officials and that documents could be released pursuant to a subpoena, it did not indicate that users' e-mail may be viewed by any member of the public who simply asks. Public employees' agreement to the acceptable use policy did not render their personal e-mail subject to FOIA.

6. Although violation of the acceptable use policy can subject defendants' employees to sanctions, a violation does not transform the employees' personal communications into public records.

7. The back-up system that retained copies of all e-mail without distinguishing between that sent pursuant to defendants' educational goals and that sent for personal reasons did not constitute an official function sufficient to render the e-mails public records subject to FOIA.

8. The e-mail involving internal union communications is personal e-mail.

9. The trial court erred by concluding that all e-mails captured in a government e-mail computer storage system, regardless of their purpose, are rendered public records subject to FOIA. The order granting summary disposition must be reversed and the case must be remanded to the trial court for further proceedings.

Reversed and remanded.

1. RECORDS — FREEDOM OF INFORMATION ACT — WORDS AND PHRASES — PUBLIC RECORDS.

A "public record" for purposes of the Freedom of Information Act is a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created; mere possession of a record by a public body

does not render the record a public document; the use or retention of a record by a public body must be in the performance of an official function for the record to be a public record (MCL 15.232[e]).

2. RECORDS — FREEDOM OF INFORMATION ACT — PUBLIC RECORDS — E-MAIL — OFFICIAL FUNCTIONS.

A back-up system employed by a public school system to retain all e-mails sent through the school's computer system and that does not distinguish between e-mails sent pursuant to the school's education goals and those sent by employees for personal reasons is not performing an "official function" sufficient to render the e-mails public records subject to the Freedom of Information Act (MCL 15.232[e]).

3. RECORDS — FREEDOM OF INFORMATION ACT — PERSONAL DOCUMENTS — PUBLIC DOCUMENTS.

Purely personal documents can become public documents for purposes of the Freedom of Information Act where the subsequent use or retention of the personal documents by a public body is in the performance of an official function of the public body (MCL 15.232[e]).

*White, Schneider, Young & Chiodini, P.C.* (by *Michael M. Shoudy, Kathleen Corkin Boyle*, and *Dena M. Lampinen*), for plaintiffs.

*Thrun Law Firm, P.C.* (by *Raymond M. Davis, David M. Revore*, and *Eric D. Delaporte*), for defendants.

*Jaffe, Raitt, Heuer & Weiss, P.C.* (by *Arthur H. Siegal* and *Nicole R. Foley*), and *John C. Scully*, for Chetly Zarko.

Amicus Curiae:

*Patrick J. Wright* for the Mackinac Center for Public Policy.

Before: CAVANAGH, P.J., and FITZGERALD and SHAPIRO, JJ.

PER CURIAM. Plaintiffs appeal as of right the trial court's grant of summary disposition to defendants and dismissal of their "reverse" Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, action.[1] We reverse and remand for further proceedings consistent with this opinion. While we believe the issue in this case is one that must be resolved by the Legislature, and we call upon the Legislature to address it, we conclude that under the FOIA statute the individual plaintiffs' personal e-mails were not rendered public records solely because they were captured in a public body's e-mail system's digital memory. Additionally, we conclude that mere violation of an acceptable use policy barring personal use of the e-mail system—at least one that does not expressly provide that e-mails are subject to FOIA—does not render personal e-mails public records subject to FOIA.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2007, the intervenor, Chetly Zarko, began submitting a series of FOIA requests to defendant Howell Public Schools (HPS), including requests for all e-mail beginning January 1, 2007, sent to and from three HPS teachers: plaintiffs Doug Norton, Jeff Hughey, and Johnson McDowell. During that time, each of these teachers was also a member and official for plaintiff Howell Education Association, MEA/NEA (HEA); Norton was president, Hughey was vice president for bargaining, and McDowell was vice president for grievances. After the filing of this lawsuit, Zarko also requested all e-mail sent to or from plaintiff Barbara Cameron that was to or from Norton, McDow-

---

[1] A "reverse FOIA" claim is one where a party "seek[s] to prevent disclosure of public records under the FOIA." *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 290; 565 NW2d 650 (1997).

ell, and Hughey. Cameron is the UniServ Director employed by the Michigan Education Association to provide representational services to the HEA. The requests were apparently made in the context of heated negotiations for a new collective bargaining agreement that were being reported in the local media.

The HEA objected to having to release union communications sent between HEA leaders or between HEA leaders and HEA members and took the position that, to the extent the e-mails addressed union matters, they were not "public records" as defined under FOIA. The HEA asked counsel for HPS to confirm whether the internal union communications of Norton, Hughey, and McDowell would be treated as nondisclosable. Counsel for HPS noted that there was no reported caselaw regarding whether personal e-mails or internal union communications maintained on the computer system of a public body were public records subject to disclosure under FOIA and suggested a "friendly lawsuit" to determine the applicability of FOIA to the e-mail requests made by Zarko.

Plaintiffs filed their complaint in May 2007 against HPS and defendant Howell Board of Education requesting a declaratory judgment that: (1) personal e-mails and e-mails pertaining to union business are not "public records" as defined by FOIA; (2) that the collective bargaining e-mails were exempt pursuant to MCL 15.243(1)(m); and (3) that the e-mails containing legal advice were exempt pursuant to MCL 15.243(1)(g). Plaintiffs also requested an injunction to prevent the release of the documents until the issues could be resolved. A temporary restraining order (TRO) was entered on May 7, 2007. Following a show cause hearing, Zarko was permitted to intervene as an intervening defendant and counter-plaintiff, the TRO was extended

"until further notice," and the parties agreed to organize all the e-mails for an in camera review. The parties were directed to release all uncontested e-mails and to deliver to the court all e-mails they contended were either not public records, or were subject to an exemption under FOIA.

The trial court appointed a special master to review approximately 5,500 e-mails.[2] At the same time, plaintiffs informed the trial court that they were withdrawing their request to defendants that an exemption under MCL 15.243(1)(m) be asserted regarding e-mail sent between one or more plaintiffs and the school administration. Defendants then released those e-mails to Zarko.

Defendants moved for summary disposition in July 2008, arguing that plaintiffs lacked standing to prevent disclosure because all the documents were public records and only defendants had the authority to assert the exemption provisions of MCL 15.243. Defendants also argued that the trial court could not grant relief to Hughey given that his e-mail had already been released and could not grant relief as to any e-mail from the other plaintiffs to which Hughey was a party because that e-mail was "no longer secret." Defendants argued that any exemption under MCL 15.243(1)(m) was inapplicable because the collective bargaining agreement had already been reached. Thus, there could be no harm to the collective bargaining negotiations, as the negotiations had concluded. Finally, defendants argued that plaintiffs were not entitled to injunctive relief because they could not show irreparable harm.

---

[2] These e-mails did not include any to or from Hughey. On May 2, 2007, before the suit was filed, the review of these e-mails was completed and defendants released the e-mails to Zarko.

The trial court held a hearing on defendants' motion for summary disposition. As to the injunction, the trial court concluded that plaintiffs lacked standing to assert the claim. As to the claimed exemptions, the trial court concluded that those issues were moot "because the disputed emails have been released to the intervenor," resulting in a lack of an actual controversy. Finally, the trial court concluded that "any emails generated through the District's email system, that are retained or stored by the district, are indeed 'public records' subject to FOIA . . . ." Plaintiffs now appeal.

## II. STANDARD OF REVIEW

The issue before us is one of statutory interpretation and arises in the context of a summary disposition motion. We review de novo both issues of statutory interpretation and a trial court's decision to grant summary disposition. *Mich Federation of Teachers v Univ of Mich*, 481 Mich 657, 664; 753 NW2d 28 (2008).

## III. ANALYSIS

The issue before us requires us to consider the application of the FOIA statute, adopted in 1977 and last amended in 1997, in the context of today's ubiquitous e-mail technology. This is a challenging issue and one that, as we noted at the outset, we believe is best left to the Legislature because it is plainly an issue concerning social policy. Unfortunately, until the Legislature makes its intention clear by adopting statutory language that takes this technology into account, we must attempt to discern, as best we can given the tools available to us, what the intent of the Legislature would have been under the circumstances presented by this technology that it could not have foreseen. Cf. *Denver Publishing Co v Bd of Co Comm'rs of Arapahoe, Colorado*, 121 P3d 190, 191-192

(Colo, 2005). We find ourselves in the situation akin to that of a court being asked to apply the laws governing transportation adopted in a horse and buggy world to the world of automobiles and air transportation.

"Consistent with the legislatively stated public policy supporting the act, the Michigan FOIA requires disclosure of the 'public record[s]' of a 'public body' to persons who request to inspect, copy, or receive copies of those requested public records." *Mich Federation of Teachers*, 481 Mich at 664-665. It is undisputed that defendants are public bodies. MCL 15.232(d)(*iii*). A "public record" is "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created."[3] MCL 15.232(e). Plaintiffs have specifically limited their appeal to whether the trial court properly concluded that all e-mails generated through defendants' e-mail system that are retained or stored by defendants are public records subject to FOIA.[4]

---

[3] Although unnecessary for the resolution of this case, we wish to address the suggestion of amicus curiae Mackinac Center for Public Policy that the "it" in the clause "from the time it is created" refers to the public body. The amicus asserts that interpreting the "it" as a writing would cause the overruling of *Detroit News, Inc v Detroit*, 204 Mich App 720; 516 NW2d 151 (1994). However, this ignores that *Detroit News* explicitly interpreted the "it" as meaning a writing:

> The city relies on the statutory clause "from the time it is created" found in the definition of public record. We do not construe this clause as requiring that a writing be "owned, used, in the possession of, or retained by a public body in the performance of an official function" from the time the writing is created in order to be a public record. A writing can become a public record after its creation. We understand the phrase "from the time it is created" to mean that the ownership, use, possession, or retention by the public body can be at any point from creation of the record onward. [*Id*. at 725.]

Accordingly, we reject the suggested interpretation.

[4] Thus, we are not ruling on whether any exemptions apply or who has the standing to argue them.

The trial court determined that the personal e-mails are public records because they are "in the possession of, or retained by" defendants. See MCL 15.232(e). However, "mere possession of a record by a public body" does not render the record a public document. *Detroit News, Inc v Detroit*, 204 Mich App 720, 724; 516 NW2d 151 (1994). Rather, the use or retention of the document must be "in the performance of an official function." See *id.* at 725; MCL 15.232(e). For the e-mails at issue to be public records, they must have been stored or retained by defendants in the performance of an official function.

Defendants argue that retention of electronic data is an official function where it is required for the operation of an educational institution, citing *Kestenbaum v Mich State Univ*, 414 Mich 510; 327 NW2d 783 (1982).[5] However, the lead opinion in *Kestenbaum* "accept[ed] without deciding" that the electronic data at issue was a public record. *Id.* at 522 (FITZGERALD, C.J.). Only Justice RYAN's opinion addressed the issue of "an official function." *Id.* at 538-539 (RYAN, J.). Justice RYAN concluded that the magnetic tape involved, which was the school's purposefully created and retained record of student names and addresses, was, in fact, "prepared, owned, used, processed, and retained by the defendant public body 'in the performance of an official function' " because the university could not have functioned " 'without such a list of students.' " *Id.* at 539.

In the present case, defendants can function without the personal e-mail. There is nothing about the personal e-mail, given that by their very definition they have nothing to do with the operation of the schools, which indicates that they are required for the operation of an

---

[5] *Kestenbaum* was a three to three decision and has no majority opinion.

educational institution. Thus, we decline to conclude that they are equivalent to the student information at issue in *Kestenbaum*. Furthermore, "unofficial private writings belonging solely to an individual should not be subject to public disclosure merely because that individual is a state employee." *Id*. We believe the same is true for all public body employees. Absent specific legislative direction to do so, we are unwilling to judicially convert every e-mail ever sent or received by public body employees into a public record subject to FOIA.

Defendants offer a simple solution approach to this puzzle, which is to simply say that anything on the school's computer system is "retained" by the school and therefore subject to FOIA. However, the school district does not assert that its back-up system was purposely designed to retain and store personal e-mail or that personal e-mail has some official function. It appears that the system is intended to retain and store e-mail relating to official functions, but that it is simply easier technologically to capture all the e-mail on the system rather than have some mechanism to distinguish them. We do not think that because the technological net used to capture public record e-mail also automatically captures other e-mails we must conclude that the other e-mails are public records.[6] To rule as defendants request would essentially render all personal e-mail sent by governmental employees while at work subject to public release upon request. We conclude that this was not the intent of the Legislature when it passed FOIA.

---

[6] Indeed, we should not presume that the question would even end with personal e-mail sent on government computers. At oral argument, defendants would not concede that employees' personal e-mail would not be subject to FOIA even if the employees sent it on their personal laptop computers if, because the laptops used a government wireless system, the e-mail was captured and retained.

E-mail has in essence replaced mailboxes and paper memos in government offices. Schools have traditionally, as part of their function, provided teachers with mailboxes in the school's main office. However, we have never held nor has it even been suggested that during the time those letters are "retained" in those school mailboxes they are automatically subject to FOIA. Now, instead of physical mailboxes, we have e-mail. However, the nature of the technology is such that even after the e-mail letter has been "removed from the mailbox" by its recipient, a digital copy of it remains, possibly in perpetuity. This effect is due solely to a change in the technology being used and, absent some showing that the retention of personal e-mail has some official function other than the retention itself, we decline to so drastically expand the scope of FOIA. We do not suggest that a change in technology cannot be a part of the circumstances that would result in a significant change in the scope of a statute. However, where the change in technology is the sole factor, we should be very cautious in expanding the scope of the law.

This position is consistent with federal cases interpreting whether an item is an "agency record" under the federal FOIA.[7] In *Bloomberg, LP v United States Securities & Exch Comm*, 357 F Supp 2d 156 (D DC, 2004), the court determined that the electronic calendar for the chairman of the Securities and Exchange Commission (SEC) was not an "agency record." *Id.* at 164. This was true even though the calendar included both personal and business appointments and "the calendar was maintained on the agency computer sys-

---

[7] "Federal court decisions regarding whether an item is an 'agency record' under the federal FOIA are persuasive in determining whether a record is a 'public record' under the Michigan FOIA." *MacKenzie v Wales Twp*, 247 Mich App 124, 129 n 1; 635 NW2d 335 (2001).

tem and backed-up every thirty days . . . ." *Id.* The plaintiff had argued that the backing-up process integrated the calendar into the agency record system. *Id.* The SEC countered that employees were "permitted 'limited use of government office equipment for personal needs' " and that the routine back-up system did "not distinguish between personal and SEC business-related documents." *Id.* In making its determination, the court reiterated that " 'employing agency resources, standing alone, is not sufficient to render a document an 'agency record.' " *Id.* (citation omitted).[8]

The e-mails in the present case are analogous to the electronic calendar and other personal uses of SEC office equipment. Defendants' storage and retention of personal e-mails is a byproduct of the fact that all e-mail is electronically retained, regardless of whether it was personal or business-related. We are not persuaded that personal e-mails are rendered "public records" under FOIA merely by use of a public body's computer system to send or receive those e-mails or by the automatic back-up system that causes the public body to "retain" those e-mails.

Contrary to Zarko's position, our determination that personal e-mails are not public records does not render

---

[8] We note that the United States Supreme Court has granted certiorari in the case of *City of Ontario, California v Quon*, 558 US ___; 130 S Ct 1011; 175 L Ed 2d 617 (2009). While that case involves an issue of privacy raised by new communications technology, it is unlikely to have any bearing on this case. In *Quon*, the city had an informal policy of allowing its employees to use their city-supplied pagers for personal text messaging provided the employee paid the extra cost of service. *Quon v Arch Wireless Operating Co, Inc*, 529 F3d 892, 897 (CA 9, 2008). Despite assurances that the city would not review the contents of the personal text messages, the city did so and an employee brought an action claiming violation of his Fourth Amendment right to be protected against unreasonable searches and seizures. *Id.* at 897-898. Because *Quon* involves the Fourth Amendment and not FOIA, it is unlikely to answer the question now before us.

MCL 15.243(1)(a) nugatory. MCL 15.243(1)(a) provides that public records may be exempt from disclosure where they contain "[i]nformation of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." As Justice RYAN noted in his opinion in *Kestenbaum*, 414 Mich at 539 n 6, "[t]he question whether a writing is a 'public document' or a private one not involved 'in the performance of an official function' is separate and distinct from the question whether the document falls within the so-called 'privacy exemption' . . . ." Implicit in this statement is that some documents are not public records because they are private while other documents are public records but will fall within the privacy exemption.

For example, personal information that falls within this exclusion includes home addresses and telephone numbers. *Mich Federation of Teachers*, 481 Mich at 677. Thus, when someone makes a FOIA request for an employee's personnel file, the personnel file is a public record, *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 288-289; 565 NW2d 650 (1997), but the employee's home address and telephone number may be redacted because they are subject to the privacy exclusion in MCL 15.243(1)(a). The employee's home address and telephone number are examples of private information contained within a public record. In contrast, an e-mail sent by a teacher to a family member or friend that involves an entirely private matter such as carpooling, childcare, lunch or dinner plans, or other personal matters, is wholly unrelated to the public body's official function. Such e-mails simply are not public records.

We recognize that the present case is distinguishable from *Bloomberg*, where limited use of the office equip-

ment for "personal needs" was expressly permitted, because defendants' employees have no such permission. Before logging into defendants' computer system, users are greeted by the following statement:

> This is a Howell Public Schools computer system. Use of this system is governed by the Acceptable Use Policy which may be viewed at http://www.howellschools.com/aup.html.
>
> All data contained on any school computer system is *owned* by Howell Public Schools, and may be monitored, intercepted, recorded, read, copied, or captured in any manner by authorized school personnel. Evidence of unauthorized use may be used for administrative or criminal action.
>
> *By logging into this system, you acknowledge your consent to these terms and conditions of use.* [Emphasis added.]

Defendants' acceptable use policy provides, in relevant part:

> Howell Public Schools provides technology in furtherance of the educational goals and mission of the District. As part of the consideration for making technology available to staff and students, users agree to use this technology only for appropriate educational purposes. . . .
>
> \* \* \*
>
> Email is not considered private communication. It may be re-posted. It may be accessed by others and is subject to subpoena. School officials reserve the right to monitor any or all activity on the district's computer system and to inspect any user's email files. *Users should not expect that their communications on the system are private.* Confidential information should not be transmitted via email.
>
> \* \* \*
>
> Appropriate use of district technology is defined as a use to further the instructional goals and mission of the district.

> Members should consider any use outside these instructional goals and mission constitutes potential misuse . . . .
>
> * * *
>
> Members are prohibited from . . . [u]sing technology for personal or private business, . . . or political lobbying . . . .

Defendants argue that their acceptable use policy notified users that personal e-mail was subject to FOIA. We disagree. Although the use policy certainly gives notice to the users that school officials may look at their e-mail, and that the documents could be released pursuant to a subpoena, it in no way indicates that users' e-mail may be viewed by any member of the public who simply asks for it. Thus, we conclude that the public employees' agreement to this acceptable use policy did not render their personal e-mail subject to FOIA.

Furthermore, we are not persuaded that a public employee's misuse of the technology resources provided by defendants, by sending private e-mails, renders those e-mails public records. The acceptable use policy makes clear that "[a]ppropriate use of district technology is defined as a use to further the instructional goals and mission of the district." An employee's use of a public body's technology resources for private communication is clearly not in the furtherance of the instructional goals of the public body. Although this is an inappropriate use that could subject the employee to sanction for violation of the policy, the violation does not transform personal communications into public records. Indeed, the fact that the communication is sent in violation of the use policy militates in favor of the conclusion that the e-mail is not a public record because it falls expressly outside the performance of an official function, i.e. the furtherance of the instructional goals of the district.

Our reasoning is also consistent with *Walloon Lake Water Sys, Inc v Melrose*, 163 Mich App 726, 730; 415 NW2d 292 (1987). In *Walloon*, a letter was sent to the township supervisor that "pertained in some way to the water system provided by plaintiff to part of the township." *Id.* at 728. The letter was read aloud at the township board's regularly scheduled meeting. *Id.* at 729. The plaintiff subsequently sought a copy of the letter under FOIA, but the township refused to provide it, claiming it was not a public record. *Id.* This Court concluded that the letter was a public record because, "once the letter was read aloud and incorporated into the minutes of the meeting where the township conducted its business, it became a public record. 'used . . . in the performance of an official function.' " *Id.* at 730. Thus, the caselaw is clear that purely personal documents can become public documents based on how they are utilized by public bodies. However, it is their subsequent use or retention "in the performance of an official function" that rendered them so. In the present case, the retention of the e-mail by defendants on which the trial court relied was nothing more than a blanket saving of all information captured through a back-up system that did not distinguish between e-mail sent pursuant to the district's educational goals and that sent by employees for personal reasons. The back-up system did not constitute an "official function" sufficient to render the e-mails public records subject to FOIA. See *Bloomberg*, 357 F Supp 2d at 164.

In reaching our decision, we have also considered two unpublished cases in which our Court has addressed issues that may be relevant. These cases are not precedential authority. However, given the limited published caselaw on the issue and the issue's significance, we have reviewed them for guidance. In *WDG Investment Co v Mich Dep't of Mgt & Budget*, unpublished opinion

per curiam of the Court of Appeals, issued October 25, 2002 (Docket No. 229950), a rejected bidder on a government project sued the state Department of Management and Budget (DMB), alleging fraud in the manner in which the bid was awarded. A second count in the action sought production, under FOIA, of the individual notes written by bid reviewing board members concerning the bids. The DMB asserted that it had no obligation to provide the notes because they were "personal" and not kept in the DMB files. This Court held that the notes were public records. We specifically noted that the defendants' use of the word "personal" was undefined and vague, stating "[i]t is not at all clear from the record what defendants mean by 'personal' notes. We therefore decline to address this argument at this time." *Id.*, unpub op at 7 n 4. Thus, the case can offer only limited guidance. However, to the degree it is helpful, it indicates that individual notes taken by a decisionmaker on a governmental issue are still public records when they were taken in furtherance of an official function. This does not suggest, however, that notes sent from one governmental employee to another about a matter not in furtherance of an official function are also public records.

A similar approach was followed in *Hess v City of Saline*, unpublished opinion per curiam of the Court of Appeals, issued May 12, 2005 (Docket No. 260394), which involved the use of video cameras to record a city council meeting. At some point, the council adjourned but the video camera was not turned off and it recorded conversations among city staffers who remained in the council chambers talking for some time after the council members had left. A copy of the videotape of the staffers' postmeeting conversations was sought under FOIA. We held that "the unedited videotape was not a public record. . . . [as] no official city business was

conducted during that time" despite the fact that the city retained the unedited tape. *Id.*, unpub op at 2. The inadvertent taping of the conversations in *Hess* was due to human error in forgetting to turn off the recorder. The "taping" of the personal e-mail in this case was similarly inadvertent because, as a result of the nature of the capture technology, the recorder can never be turned off.

This is *not* to say that personal e-mails cannot become public records. For example, were a teacher to be subjected to discipline for abusing the acceptable use policy and personal e-mails were used to support that discipline, the use of those e-mails would be related to one of the school's official functions—the discipline of a teacher—and, thus, the e-mails would become public records subject to FOIA. This is consistent with *Detroit Free Press, Inc v Detroit*, 480 Mich 1079 (2008). It is common knowledge that underlying that case was a wrongful termination lawsuit that resulted in a multi-million dollar verdict against the city of Detroit. During the course of the lawsuit and subsequent settlement negotiations, certain text messages became public, which had been sent between the Detroit mayor and a staff member through the staff member's city-issued mobile device. The text messages indicated that the mayor and the staff member had committed perjury. Two newspapers filed FOIA requests for the settlement agreement from the wrongful termination trial, along with various other documents. Our Supreme Court found no error in the trial court's determination that the settlement agreement was a public record subject to disclosure under FOIA. *Id.* However, the Supreme Court did *not* rule that the text messages themselves were public records. The Court's order denying leave to appeal contains no reference to text messages. Rather,

the order indicated that the documents setting forth the settlement agreement were subject to FOIA. *Id.*

Having determined that the personal e-mails are not "public records" subject to FOIA, the next question is whether e-mails involving "internal union communications"[9] are personal e-mails. We conclude that they are. Such communications do not involve teachers acting in their official capacity as public employees, but in their personal capacity as HEA members or leadership. Thus, any e-mail sent in that capacity is personal. This holding is consistent with the underlying policy of FOIA, which is to inform the public "regarding the affairs of government and the official acts of . . . public employees . . . ." MCL 15.231(2). See *Walloon*, 163 Mich App at 730 (holding that the purpose of FOIA "must be considered in resolving ambiguities in the definition of public record"). The release of e-mail involving internal union communications would only reveal information regarding the affairs of a labor organization, which is not a public body.

### IV. CONCLUSION

This is a difficult question requiring that we apply a statute, whose purpose is to render government transparent, to a technology that did not exist in reality (or even in many people's imaginations) at the time the statute was enacted and that has the capacity to make "transparent" far more than the drafters of the statute could have dreamed. When the statute was adopted,

---

[9] We define "internal union communications" to mean those communications sent only between or among HEA members and leadership, involving union business or activities, including contract negotiation, grievance handling, and voting. Any e-mail involving these topics that is sent to the district is no longer purely between or among HEA members and leadership and, therefore, does not fall under this category.

personal notes between employees were simply thrown away or taken home and only writings related to the entity's public function were retained. Thus, we conclude that the statute was not intended to render all personal e-mails public records simply because they are captured by the computer system's storage mechanism as a matter of technological convenience.

Accelerating communications technology has greatly increased tension between the value of governmental transparency and that of personal privacy. As we stated at the outset, the ultimate decision on this important issue must be made by the Legislature and we invite it to consider the question. However, on the basis of the statute adopted in 1977, the technology that existed at that time, and the caselaw available to us, we conclude that the trial court erred in its conclusion that all e-mails captured in a government e-mail computer storage system, regardless of their purpose, are rendered public records subject to FOIA.[10]

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, a public question being involved.

---

[10] Although the question is not before us, we note that an e-mail transmitted in performance of an official function would appear to be a public record under FOIA.