

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE __SEP 0 5 2019__

~~~~~~~~ C.G.
CHIEF JUSTICE



This opinion was
filed for record
at 8a.m. on Sept 5, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL 925,
a labor organization,

        Respondent,

    v.

THE UNIVERSITY OF WASHINGTON,
an agency of the State of Washington,

        Respondent,

FREEDOM FOUNDATION, an
organization,

        Petitioner.

NO. 96262-6

EN BANC

Filed ___SEP 0 5 2019___

STEPHENS, J.—Petitioner Freedom Foundation (Foundation) filed a public records request for records relating to union organizing by several University of Washington (UW) faculty members. The UW asked one of these faculty members to search his e-mail accounts for responsive records and, after reviewing those records, gave notice that it intended to release many of them in the absence of an injunction. Respondent Service Employees International Union 925 (Union)

initiated an action in King County Superior Court to enjoin release of any union-related records, arguing they were not "public records" under chapter 42.56 RCW, Washington's Public Records Act (PRA). The trial court granted the injunction and the Court of Appeals affirmed, applying the "scope of employment" test from *Nissen v. Pierce County*, 183 Wn.2d 863, 357 P.3d 45 (2015). The Foundation petitioned for review, arguing that the "scope of employment" test applies only to records created or stored on an employee's *personal* device and should not be extended to records on public agencies' e-mail servers. We agree and now reverse the Court of Appeals.

## FACTS

In late December 2015, the Foundation filed a public records request with the UW's office of public records and public meetings (OPR) seeking:

1. All documents, emails or other records created by, received by, or in the possession of University of Washington faculty/employees Amy Hagopian, Robert Wood, James Liner, or Aaron Katz that contain any of the following terms:
   a. Freedom Foundation (aka., "FF," "EFF," and "the Foundation")
   b. Northwest Accountability Project
   c. Right-to-work (aka., "right to work," "RTW," and "R2W")
   d. Friedrichs v. California Teachers Association (aka., "Friedrichs v. CTA" and "Friedrichs")
   e. SEIU
   f. Union
2. All emails sent by University of Washington faculty/employees Amy Hagopian, Robert Wood, James Liner, or Aaron Katz to any email address ending in "@seiu925.org" or "@uwfacultyforward.org"

3. All emails received by University of Washington faculty/employees Amy Hagopian, Robert Wood, James Liner, or Aaron Katz from any email address ending in "@seiu925.org" or "@uwfacultyforward.org"

4. All emails sent from and received by the following email address: aaup@u.washington.edu.

Clerk's Papers (CP) at 39. The request specified that it was limited to "records from January 1, 2014 to the present." *Id.*

The UW contacted Professor Rob Wood, who was president of the UW chapter of the American Association of University Professors (AAUP) and a member of the Union, and asked him to search his e-mail accounts for records responsive to the Foundation's request. He provided OPR with a large number of e-mails from both UW and non-UW accounts. After OPR reviewed those e-mails, it could not definitively determine whether they were "public records" subject to disclosure under the PRA. Following its standard records request procedure,[1] the UW notified Professor Wood that it would release 3,913 pages of e-mails unless he sought a contrary court order by April 26, 2016. Professor Wood asked OPR for copies of those e-mails, and it provided him a CD (compact disk) with a PDF (portable document format) file. According to the UW, "the vast majority of the emails [in the file were] sent to or from a University email address." CP at 209.

---

[1] In the trial court, counsel for the UW explained that, as a matter of policy, OPR errs on the side of releasing records when PRA coverage is uncertain.

According to Professor Wood, "some of the emails in the document were sent from or received by me at my private, non-UW email address." CP at 43.

On April 25, 2016, the Union filed a complaint for declaratory and injunctive relief, seeking to prevent the release of

> personal and private emails related to union organizing; emails from the "listserver" of a private organization, the UW chapter of the [AAUP]; personal and private emails between Professor Wood and other individuals, including faculty members; and lists of faculty and members of the public, some of which include individuals' contact information.

CP at 2.[2] The complaint conceded that some of the requested e-mails "probably relate to government business." CP at 7. But it argued that many other e-mails were strictly personal and that their release would chill union organizing efforts, restrain speech, and violate individuals' privacy rights. The complaint also alleged that release of the e-mails would substantially and irreparably damage the Union and Professor Wood and that the information the Foundation sought was not of legitimate public concern.

The trial court held a preliminary injunction hearing on June 10, 2016. At that hearing, the trial court granted an injunction lasting only until July 6 "to give Mr. Woods [sic] and Counsel an opportunity to review the records in some detail and

---

[2] The Union also moved for a temporary restraining order (TRO) to prevent the UW from releasing the records. The Union agreed to forgo the TRO and argue the case at a preliminary injunction hearing, however, in exchange for the Foundation's agreement to waive claims to any penalties or attorney fees accruing in the interim.

make a more precise catalog as to which ones may not be public records." CP at 482. The court characterized this relief as a "temporary injunction rather than a full-blown preliminary injunction because . . . preliminary injunction relief is premature at this point in time until I get more information." CP at 484. It then issued a written temporary restraining order. CP at 267. Following entry of that order, and with Professor Wood's help, the Union cataloged the e-mails, identified 102 pages as public records, and sent those pages to the Foundation. It placed the remaining documents into four categories: (1) "emails and documents about faculty organizing, including emails containing opinions and strategy in regard to faculty organizing, and direct communications with SEIU 925 employees," CP at 504, (2) "postings to the AAUP [UW] chapter listserve," CP at 504-05, (3) "personal emails or documents unrelated to UW business," CP at 505, and (4) "personal emails sent or received by Prof. Wood in his capacity as AAUP [UW] Chapter President and unrelated to UW business," CP at 505.

The trial court held a second preliminary injunction hearing on August 5, 2016. Applying the "scope of employment" test from *Nissen*, 183 Wn.2d at 876, the trial court granted the injunction as to all of the e-mails at issue.

On February 24, 2017, the Union filed a motion for summary judgment and a permanent injunction. The trial court entered an order granting that motion on

March 27, 2017. In its written findings and conclusions, the trial court omitted any mention of *Nissen* and instead explained that its decision "is predicated primarily on *Tiberino v. Spokane Co. Prosecutor*, 103 Wn[.] App[.] 680[, 13 P.3d 1104] (2000)." CP at 693.

The Foundation appealed. Expressly adopting *Nissen*'s "scope of employment" test, Division One of the Court of Appeals affirmed. *Serv. Emps. Int'l Union Local 925 v. Univ. of Wash.*, 4 Wn. App. 2d 605, 618-20, 423 P.3d 849 (2018) (*SEIU 925*). We granted the Foundation's petition for review. 192 Wn.2d 1016 (2019).

## ANALYSIS

Judicial review of agency actions under the PRA is de novo. RCW 42.56.550(3). Where, as here, the record on appeal consists solely of declarations or other documentary evidence, we stand in the same position as the trial court (which has made no credibility determinations). *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989). Consistent with the PRA's "'strongly worded mandate for broad disclosure of public records,'" we construe the statute's disclosure requirements liberally and its exemptions narrowly. *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 791, 246 P.3d 768 (2011)

(internal quotation marks omitted) (quoting *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007) (plurality opinion)).

The PRA defines a "public record," in relevant part, to include "[(1)] any writing [(2)] containing information relating to the conduct of government or the performance of any governmental or proprietary function [(3)] prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010(3). To fall within the PRA's coverage, a record must satisfy all three prongs of the definition. *West v. City of Puyallup*, 2 Wn. App. 2d 586, 592, 410 P.3d 1197 (2018). This definition is very broad, "encompassing virtually any record related to the conduct of government." *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 147, 240 P.3d 1149 (2010). The second prong in particular "casts a wide net," *Nissen*, 183 Wn.2d at 880.

I.   The "Scope of Employment" Test Applies Only to Writings Created On Personal Devices; the Court of Appeals Erred by Applying It in This Case

In *Nissen*, this court addressed the Pierce County prosecutor's use of a personal cell phone to carry out some of his official duties. 183 Wn.2d at 869. We held that even "records an agency employee prepares, owns, uses, or retains on a *private* cell phone . . . can be a public record" if they are prepared, owned, used, or retained "within the scope of employment." *Id.* at 877 (emphasis added). We reasoned that, when an agency employee acts within the "scope of employment," the

agency *itself* is acting and must not be permitted to escape the PRA's transparency mandate, *id.* at 876, and we held that a "communication is 'within the scope of employment' only when the job requires it, the employer directs it, or it furthers the employer's interests." *Id.* at 878-79 (citing *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 573, 320 P.2d 311 (1958) (citing *Lunz v. Dep't of Labor & Indus.*, 50 Wn.2d 273, 310 P.2d 880 (1957); *Roletto v. Dep't Stores Garage Co.*, 30 Wn.2d 439, 191 P.2d 875 (1948))).

*Nissen*'s "scope of employment" test addresses the third prong of the public records definition: it helps determine whether records are, as a matter of law, "prepared, owned, used, or retained" by an *agency*, RCW 42.56.010(3), even though they are stored on an agency employee's *personal* device. *See* 183 Wn.2d at 875-76. The question presented in this case is different from the question in *Nissen*. Here, we must determine whether records stored on agency servers satisfy the second prong of the public records definition, i.e., "contain[] information relating to the conduct of government or the performance of any governmental or proprietary function," RCW 42.56.010(3). The Court of Appeals recognized this distinction, but nevertheless concluded that "the [*Nissen*] court's analysis is highly relevant to our inquiry," and applied the "scope of employment" test to determine whether the records at issue here satisfied the second prong of the public records definition.

-8-

*SEIU 925*, 4 Wn. App. 2d at 619. Extrapolating from *Nissen*, the court held that, regardless of *where* a particular record is created or stored, "whether an agency employee's record is subject to disclosure hinges on if the record was prepared, used, or retained within the scope of employment." *Id.* (citing *West v. Vermillion*, 196 Wn. App. 627, 641, 384 P.3d 634 (2016)). We reject that approach for two reasons.

First, using the "scope of employment" test to determine whether a record satisfies RCW 42.56.010(3)'s second prong conflicts with *Nissen*'s reasoning. As noted, the "scope of employment" test pertains solely to RCW 42.56.010(3)'s third prong, and it is clear from the court's reasoning in *Nissen* that the statute's second prong triggers a separate inquiry. *See* 183 Wn.2d at 877 ("We hold that records an agency employee prepares, owns, uses, or retains on a private cell phone within the scope of employment can be a public record *if they also meet the other requirements of RCW 42.56.010(3).*" (emphasis added)). In fact, *Nissen* separately addresses the second prong of the public record definition and, in its analysis of that prong, the court does not apply the "scope of employment" test. *Id.* at 880-81. The Court of Appeals here conflated the analyses that *Nissen* kept separate, effectively holding that an e-mail satisfies the second prong ("relat[es] to the conduct of government or the performance of any governmental or proprietary function") only if it satisfies the

third prong (was "prepared, owned, used, or retained" by the agency itself). RCW 42.56.010(3). This was error.

Second, *Nissen*'s "scope of employment" test serves a narrow purpose and was created to address policy concerns unique to the context of personal accounts or devices. The *Nissen* court recognized that agency employees have heightened expectations of privacy in that context. *See* 183 Wn.2d at 883 ("We are mindful that today's mobile devices often contain 'a "wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.""" (alteration in original) (quoting *State v. Hinton*, 179 Wn.2d 862, 869, 319 P.3d 9 (2014) (quoting *United States v. Jones*, 565 U.S. 400, 415, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012) (Sotomayor, J., concurring)))). At the same time, it also recognized that a categorical exemption for records on personal devices would frustrate the PRA's fundamental purpose. *See id.* at 876 ("If the PRA did not capture records individual employees prepare, own, use, or retain in the course of their jobs, the public would be without information about much of the daily operation of government . . .[,] an affront to the core policy underpinning the PRA."). Where personal accounts or devices are concerned, the "scope of employment" test strikes the proper balance between employee privacy and government transparency. But those interests weigh differently in the context here, involving nonpersonal, agency-issued accounts.

We hold that the Court of Appeals erred by applying *Nissen*'s third prong analysis to answer the second prong question presented here. This case may present a limited *Nissen* issue to the extent any of the e-mails responsive to the Foundation's request were sent through personal accounts.[3] But the "scope of employment" test does not determine whether a record that is concededly "retained" by an agency also satisfies the second prong of the public records definition. We turn now to an analysis of that issue.

II. On the Existing Record, the E-mails at Issue Here Appear To Satisfy the Second Prong of the Public Records Definition

A writing satisfies RCW 42.56.010(3)'s second prong if it "contain[s] information relating to the conduct of government or the performance of any governmental or proprietary function." As we stated in *Nissen*, this standard "casts a wide net" and "suggest[s] records can qualify as public records if they contain any information that refers to or impacts the actions, processes, and functions of government." 183 Wn.2d at 880-81. The Foundation contends the e-mails and LISTSERV postings requested here satisfy that standard for two reasons: first, because any e-mail sent by an agency employee using agency accounts or devices

---

[3] Contrary to assertions in the briefing by the Foundation and UW, the Union never conceded that the third prong is satisfied with respect to every e-mail at issue.

indicates how that employee is using taxpayer resources[4] and, second, because any e-mail responsive to the Foundation's request likely discusses working conditions at the UW.

The Foundation's first argument is overbroad. Were we to hold that an e-mail is a public record solely because it was sent through an agency account, we would reduce the definition of a public record to RCW 42.56.010(3)'s third prong in the context of agency employee e-mails: regardless of its content, any message stored on an agency server would necessarily meet the statute's definition. We do not believe our legislature intended that result. *See State v. Larson*, 184 Wn.2d 843, 850, 365 P.3d 740 (2015) (statutes will be interpreted so as to give effect to all of their provisions, "'with no portion rendered meaningless or superfluous'" (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003))). Courts in numerous other jurisdictions have addressed similar arguments, and they uniformly hold that mere retention on a government server is insufficient, by itself, to bring an e-mail within the scope of a government transparency law.[5] To

---

[4] In its briefing to this court, the Foundation argues that even the e-mails designated "'unrelated to any UW business'" (the third category identified by the Union and Professor Wood) should at least have disclosable time stamps, which "would show the use of state resources for personal activity," Pet. for Discr. Review at 12. We note that the Foundation's PRA request to UW did not seek any time stamps.

[5] For example, the Wisconsin Supreme Court interpreted that state's public records law, which defined a disclosable "'[r]ecord'" as "any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless

of physical form or characteristics, which has been created or is being kept by an authority" and expressly excluded "drafts, notes, . . . and like materials prepared for the originator's personal use . . . [and] materials which are purely the personal property of the custodian and have no relation to his or her office." *Schill v. Wis. Rapids Sch. Dist.*, 2010 WI 86, ¶ 55, 327 Wis. 2d 572, 786 N.W.2d 177 (2010) (quoting WIS. STAT. § 19.32(2)). The court held that employees' personal e-mails were not disclosable records under the statute, reasoning that their disclosure would not further the state legislature's aim of creating an informed electorate. *Id.* at ¶ 81. The Florida Supreme Court construed a state statute that defined "public records" as "'all documents . . . or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.'" *Florida v. City of Clearwater*, 863 So. 2d 149, 151-52 (Fla. 2003) (quoting FLA. STAT. § 119.011(1) (2002)) (emphasis omitted). The court cited a *Nissen*-type case (addressing a public agency's use of a private contractor to store records) and concluded that, "[j]ust as an agency cannot circumvent the Public Records Act by allowing a private entity to maintain physical custody of documents that fall within the definition of 'public records,' private documents cannot be deemed public records solely by virtue of their placement on an agency-owned computer." *Id.* at 154 (citation omitted) (citing *Wisner v. City of Tampa Police Dep't*, 601 So. 2d 296, 298 (Fla. Dist. Ct. App. 1992)). Similarly, the West Virginia Supreme Court interpreted that state's Freedom of Information Act, which defined disclosable records "as 'includ[ing] any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body,'" and held that this statute unambiguously excluded from its scope any e-mail unrelated to "the official duties, responsibilities or obligations" of a covered public agency, regardless of where it was stored. *Associated Press v. Canterbury*, 224 W. Va. 708, 715-16, 688 S.E.2d 317 (2009) (alteration in original) (quoting W. VA. CODE § 29B-1-2(4)). Finally, the Arkansas Supreme Court interpreted that state's Freedom of Information Act, which defined "public records" as "'writing, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds" and provided that "[a]ll records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.'" *Pulaski County v. Ark. Democrat-Gazette, Inc.*, 370 Ark. 435, 439, 260 S.W.3d 718 (2007)) (quoting ARK. CODE ANN. § 25-19-103(5)(A)). The court held that "statutes that cover only those records made or received 'in connection with' or [like RCW 42.56.010(3)] 'relating to' the agency's duties" do not sweep up employees' personal e-mails, even if those e-mails are sent from agency accounts during work hours

the extent these cases involve statutory language at least as broad as Washington's PRA, we find their reasoning persuasive. *See Fortgang v. Woodland Park Zoo*, 187 Wn.2d 509, 513, 387 P.3d 690 (2017) (to interpret Washington's PRA, courts may rely on precedent from other jurisdictions interpreting "similar transparency laws").

The Foundation's second argument is narrower, limited to e-mails and LISTSERV postings that relate to faculty working conditions at the UW or to the UW's educational mission. Specifically, the Foundation argues that any e-mail about faculty organizing is likely to relate to government functions because it is likely to discuss working conditions at the UW, and that all e-mails shared over the AAUP LISTSERV or sent by Professor Wood in his capacity as AAUP UW chapter president are likely to "relate to the state as an employer and the state as an educator." Pet. for Discr. Review at 11-12. We agree that many of these e-mails likely relate to government conduct. These topics—involving a state university's treatment of its students and faculty—"relat[e] to the conduct of government," RCW 42.56.010(3), for purposes of the PRA's public records definition. *Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 566, 618 P.2d 76 (1980) (information in public hospital patient's record "relate[s] to the performance of a governmental or proprietary function" because it concerns the "administration of health care services,

---

and retained on agency servers. *Id.* at 440 (quoting JOHN J. WATKINS & RICHARD J. PELTZ, *The Arkansas Freedom of Information Act* 91, 93 (4th ed. 2004)).

facility availability, use and care, methods of diagnosis, analysis, treatment and costs"). Thus, to the extent the e-mails responsive to the Foundation's request relate to these topics, they satisfy RCW 42.56.010(3)'s second prong.

In support of its contrary position, the Union relies primarily on two cases: *Howell Education Ass'n v. Howell Board of Education*, 287 Mich. App. 228, 789 N.W.2d 495 (2010), and *Tiberino*, 103 Wn. App. 680. In *Howell*, the Michigan Court of Appeals addressed a request, under that state's Freedom of Information Act, for all e-mails sent to and from three public school teachers, each of whom was a teachers' union member and official. 287 Mich. App. at 231. The court held that the e-mails were not public records. *Id.* at 239. The Union cites *Howell* for the argument that union-related e-mails are inherently "personal" and thus outside the scope of government transparency laws. In *Tiberino*, our Court of Appeals addressed a request for e-mails that an employee of the Spokane County Prosecutor's Office exchanged with her mother and sister, using her work-issued computer and e-mail account. 103 Wn. App. at 683-84. The court held those e-mails "containe[d] information relating to the conduct of a governmental or proprietary function" because the county had stored and printed them in preparation for litigation over the employee's termination. *Id.* at 688. The Union cites *Tiberino* for the argument that

agency employee e-mails do not become public records until the agency itself makes some official use of them.

Neither *Howell* nor *Tiberino* is on point, however. *Howell* is inapposite because it applied a statute with language much narrower than the PRA's, defining a "'public record'" as "'a writing prepared, owned, used, in the possession of, or retained by a public body *in the performance of an official function*,'" *id.* at 235 (emphasis added) (quoting former MICH. COMPILED LAWS 15.232(e) (2010)). The Michigan statute thus expressly incorporates a test that seems like the "scope of employment" test and, for the reasons given above, that test is not coextensive with the PRA's prong two analysis. *Tiberino* is inapposite because it involved no dispute over the nature of the e-mails at issue: the parties agreed those e-mails were entirely "personal" and thus substantively unrelated to the conduct of government. 103 Wn. App. at 685. It was from that starting premise that the court then focused on the agency's subsequent use of the e-mails in litigation. Therefore, while *Tiberino* supports the conclusion that mere retention on an agency server is not enough to bring an e-mail within the scope of the PRA, it does not tell us anything about e-mails in which agency employees discuss work-related matters.

On the record before us, what little we know about the e-mails at issue indicates that many of them may discuss work-related matters. We know that some

relate to faculty unionization, some were sent by Professor Wood in his capacity as AAUP UW chapter president, and some were posted to the AAUP UW chapter LISTSERV, all of which may include discussions of the state university's treatment of its students and faculty or UW's educational mission. This is the way the Union characterized the e-mails responsive to the Foundation's initial request, and the Foundation accepted that description for purposes of resisting summary judgment. *See* CP at 344-46 (Def. Freedom Found.'s Resp. to Pl.'s Mot. for Summ. J. & Permanent Inj.) (arguing that "personal e-mails [sent or received through agency e-mail accounts] . . . fit the definition of 'public records' because they show a public employee misusing public property, public time, and his public duties in favor of his personal pursuits" and that "[r]ecords pertaining to public-sector unions [necessarily] relate to government conduct"). The Foundation did not argue that any more information was needed for the court to rule, and it did not seek in camera review of any responsive records.[6]

---

[6] For this reason, the Foundation failed to preserve its argument that the trial court erred by refusing to conduct in camera review of the disputed records. Indeed, even in its briefing to this court, the Foundation did not ask for in camera review. Instead, the Foundation sought immediate disclosure. Pet. for Discr. Review at 17 ("the Court should not remand, but rather should order disclosure of the records as the request was made three years ago, providing ample time for the factual burden to be born"); Suppl. Br. of Pet'r at 18 ("this Court should reverse the Division One Court of Appeals, require the release of the records, and award costs on appeal to the Foundation").

Ultimately, the trial court granted the Union's motion for summary judgment and a permanent injunction "primarily" because it concluded that, under *Tiberino*, 103 Wn. App. 680, "emails [are not] public records simply because they [are] on a state agency's server." CP at 693. Its order contains no reference to *Nissen* and does not specifically address the Foundation's narrower argument that union-related e-mails and AAUP postings are likely to discuss matters related to the conduct of government. The Court of Appeals, in contrast, relied on the "scope of employment" test and erroneously concluded that, because the e-mails at issue "relat[ed] to faculty organizing and address[ed] faculty concerns," they were by definition "not within the scope of employment." *SEIU 925*, 4 Wn. App. 2d at 620. The court reasoned that "union activities" are outside the "scope of employment" as a matter of law because, whereas "[a]ctions undertaken within the scope of employment are those that the employer has the right to control," several statutes prohibit employers from exerting any influence over employees' union activities. *Id.* It affirmed the trial court's grant of summary judgment on this basis, without explaining why non-union-related e-mails "addressing faculty concerns" fell outside the "scope of employment."[7] *Id.*

---

[7] Some of the specific "faculty concerns" the Foundation identified as the likely subjects of AAUP postings and e-mails were "'fundamental professional values and standards for higher education'" and "'standards and procedures that maintain quality in

-18-

For the reasons given above, we hold that this was error. For an e-mail to "contain[] information relating to the conduct of government or the performance of any governmental or proprietary function," RCW 42.56.010(3), it need not have been sent or received within the "scope of employment," as that phrase is defined in *Nissen*, 183 Wn.2d at 878-79. Instead, the PRA requires only that it fall within the second prong's "wide net," *Nissen*, 183 Wn.2d at 880. On the existing record, albeit limited, most of the disputed e-mails appear to satisfy that standard because they most likely address faculty working conditions or the UW's educational mission.

Because the trial court found the disputed e-mails were not public records under RCW 42.56.010(3) as a matter of law, it did not reach the Union's other arguments against release, which included assertions of statutory and constitutional exemptions from PRA coverage. Our holding on the "scope of employment" test does not dispose of those arguments, which remain available to the Union on remand.

## CONCLUSION

The "scope of employment" test adopted in *Nissen* applies only to records retained on an agency employee's personal device or account and determines only whether such records meet the third prong of RCW 42.56.010(3)'s definition. The

---

education.'" Opening Br. of Appellant Freedom Found. at 25 (Wash. Ct. App. No. 76630-9-I (2017)) (emphasis omitted) (quoting CP at 100-01).

Court of Appeals erred by applying the "scope of employment" test to determine whether the records at issue in this case—most of which are concededly retained on agency servers—meet the second prong of the definition. Accordingly, we reverse the Court of Appeals' decision affirming the trial court's grant of summary judgment and permanently enjoining the release of these records. We remand to the trial court for application of the proper analysis and further consideration of the Union's other arguments against release.

_____ Stephens, J.

WE CONCUR:

_____ Fairhurst, C.J.

_____ Johnson, J.

_____ Madsen, J.

_____ Owens, J.

_____ Wiggins, J.

_____ González, J.

_____ Gordon McCloud, J.

_____ Yu, J.