[No. 51697–9.   En Banc.   June 19, 1986.]

FEDERAL WAY FAMILY PHYSICIANS, INC., ET AL,
*Respondents,* v. TACOMA STANDS UP
FOR LIFE, ET AL, *Petitioners.*

*James J. Mason, Sherrard, McGonagle, Green & Mc-Kinstry,* and *Roger D. Sherrard,* for petitioners.

*Sverre O. Staurset,* for respondents.

*Kenneth D. VanDerhoef* and *Steven Frederick Mc-Dowell* on behalf of the Catholic League for Religious and Civil Rights, amici curiae.

*Nancy Hawkins* and *Marilyn Endriss* on behalf of the Northwest Women's Law Center, amici curiae.

*Gary A. Preble* on behalf of Women Exploited by Abortion, amicus curiae.

*John W. Phillips* and *James E. Lobsenz* on behalf of the American Civil Liberties Union, amici curiae.

*Janet Varon, Franklin W. Shoichet,* and *Fred Diamondstone* on behalf of the National Lawyers Guild, amici curiae.

PEARSON, J.—This case raises the same principal issues addressed in *Bering v. Share,* 106 Wn.2d 212, 721 P.2d 918 (1986), and originally was consolidated with *Bering v. Share* for oral argument. Due to our differing treatment of the cases, we are treating them as companion cases, with separate opinions.

Federal Way Family Physicians, Inc. (Clinic), is a family health care center located at the corner of South "L" and 9th Streets in Tacoma, Washington. There are public sidewalks on the 9th, 10th and L Street sides of the property.

The fourth side is bounded by an alley. The building is surrounded by on-site parking on most of three sides. Access from the parking lot to the building does not necessarily entail use of any public sidewalk.

The Clinic offers a wide variety of health care, including pediatrics, prenatal care, obstetrics, internal medicine, outpatient surgery, psychiatry, and care of hospital patients. A small portion of the Clinic's practice deals with abortions, and not all of the physicians at the Clinic perform abortions.

Tacoma Stands Up For Life (TSUFL) is an informal organization of individuals dedicated to dissuading physicians from performing abortions and expectant mothers from receiving them. TSUFL and others have picketed and "counseled" pedestrians on public sidewalks adjoining the Clinic since August 1984. Before commencing activity, petitioners consulted counsel. Based on advice received, they prepared printed guidelines which are given to each participant. The guidelines contain a detachable agreement to comply with their provisions, which is signed by each recipient and given to one of TSUFL's leaders, Albert D. Niebergall.

TSUFL has conducted its activity for about 2 hours each week, between 2 and 4 p.m. on Thursdays. Activities consist of (1) marching or picketing, conducted on the 9th Street sidewalk by between 6 and 20 persons; and (2) sidewalk "counseling", conducted on the L Street sidewalk by 2 or 3 people. The "counselors" do not carry signs. They speak to people on the sidewalk, but claim they do not go up the private walkway to the building entrance. The "counselors" also distribute pamphlets, including one which offers the expectant mother an alternative to abortion.

On January 14, 1985, the Clinic sued TSUFL for damages and simultaneously moved for a preliminary injunction against the demonstrators, supporting their motion with numerous affidavits. The matter came on for hearing on January 28, 1985, following which the trial court granted an injunction which prohibited TSUFL and those acting in

concert with TSUFL from:

1. Picketing or counseling on the public sidewalk on the L Street side of the Clinic;

2. Picketing or counseling on the alley side of the Clinic;

3. Obstructing free access to the parking lot entrance on South 9th Street;

4. Use of the words "killers", "murderers", "killed" or "murdered" in referring to physicians and patients.

TSUFL argues that the preliminary injunction lacked evidentiary support in the record, and that the trial court erred in issuing the injunction under the rules pertaining to the issuance thereof. TSUFL also argues that the place and content restrictions are violative of free speech protections under the First Amendment and Const. art. 1, § 5. Finally, TSUFL argues that it is entitled to attorney fees for its efforts in opposing an injunction which allegedly was wrongfully issued.

I

The granting or withholding of an injunction is addressed to the sound discretion of the trial court to be exercised according to the circumstances of each case. *Alderwood Assocs. v. Washington Envtl. Coun.*, 96 Wn.2d 230, 233, 635 P.2d 108 (1981); *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415–16, 63 P.2d 397 (1936). For purposes of granting or denying injunctive relief, we must determine whether the trial court's decision is based on untenable grounds, is manifestly unreasonable, or is arbitrary. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Lenhoff v. Birch Bay Real Estate, Inc.*, 22 Wn. App. 70, 74–75, 587 P.2d 1087 (1978).

Preliminary injunctive relief may be available to a party under the circumstances set forth in the injunction statute, RCW 7.40.020.[1] The court's most recent opinion outlining

---

[1]RCW 7.40.020 provides in relevant part:

"When it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce great injury to the plaintiff; or when during the liti-

the necessary criteria for injunctive relief under the statute is *Washington Fed'n of State Employees, Coun. 28 v. State,* 99 Wn.2d 878, 665 P.2d 1337 (1983). *See also Tyler Pipe Indus., Inc. v. Department of Rev.,* 96 Wn.2d 785, 638 P.2d 1213 (1982). In *Washington Fed'n of State Employees,* the court quoted the following criteria from *Port of Seattle v. International Longshoremen's Union,* 52 Wn.2d 317, 319, 324 P.2d 1099 (1958):

> It is an established rule in this jurisdiction that one who seeks relief by temporary or permanent injunction must show (1) that he has a clear legal or equitable right, (2) that he has a well–grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him.

*Washington Fed'n of State Employees,* at 888. Because all three of these criteria must be satisfied to warrant preliminary injunctive relief, the failure to establish any one or more of the criteria generally dictates that we deny the requested relief.

■ In the case of *Isthmian S.S. Co. v. National Marine Eng'rs Beneficial Ass'n,* 41 Wn.2d 106, 117, 247 P.2d 549 (1952), this court emphasized the necessity of establishing a clear legal or equitable right and held that a preliminary injunction "will not issue in a doubtful case". In *Tyler Pipe,* the court determined that to answer the question of whether a party has a clear right, it must analyze the moving party's likelihood of prevailing on the merits. In making this determination, the court does not adjudicate the ultimate rights of the parties in the lawsuit. *Tyler Pipe,* at 793.

The trial judge, in his preliminary injunction, failed to state that respondents were likely to prevail on the merits. Although a trial court should include such a conclusion in

---

gation, it appears that the defendant is doing, or threatened, or is about to do, or is procuring, or is suffering some act to be done in violation of the plaintiff's rights respecting the subject of the action tending to render the judgment ineffectual; or where such relief, or any part thereof, consists in restraining proceedings upon any final order or judgment, an injunction may be granted to restrain such act or proceedings until the further order of the court . . ."

an injunctive order, we would elevate form over substance if we were to strike down the challenged injunction on this ground. The primary reasons for issuing the injunction were to (1) facilitate the ingress into and egress from the Clinic, and (2) prevent harm to the doctor–patient relationship. Given the discussion in *Bering v. Share,* 106 Wn.2d 212, 721 P.2d 918 (1986), the respondents obviously had a clear legal or equitable right to free ingress and egress and preservation of the doctor–patient relationship. We refuse to strike down the injunction simply because the trial court failed to state what to it seemed obvious.

Regardless of the respondents' perception, the trial court could not have determined that respondents had a well grounded fear of invasion of a legal or equitable right, for the purpose of a preliminary injunction, unless the evidence clearly supported that conclusion. *Isthmian,* at 117–18. Accordingly, this court must determine whether there was substantial evidence before the court enabling the judge to conclude that the respondents had a well grounded fear of invasion.

■ The parties sharply dispute the nature of the conduct in which TSUFL picketers engaged. Unfortunately, unlike the record in *Bering v. Share, supra,* the record in this case is composed entirely of affidavits, lacking photographs and live testimony. Accordingly, the trial court's findings of fact are deserving of less deference. *State v. Rowe,* 93 Wn.2d 277, 280, 609 P.2d 1348 (1980).

TSUFL vigorously disputes the trial court's finding with respect to ingress and egress. Except for one supplemental affidavit, apparently drafted especially to show hindrance of ingress and egress, there is very little evidence that movement into and out of the Clinic actually was being frustrated. Unlike the photographs in *Bering v. Share, supra,* the paper record in this case sheds little light on

whether ingress and egress had been impeded. Accordingly, we hold the trial court improperly concluded that the respondents had a well grounded fear of invasion.

■ Although ordinarily we would tend to give the trial court's findings greater deference, where important constitutional rights are involved we are reluctant to uphold a preliminary injunction against speech activities unless substantial evidence exists in the record to support the injunction. We recognize that the exigent circumstances under which a preliminary injunction is issued frequently preclude the full development of a record which would suffice on appeal. Thus, we do not intend to discourage trial courts from issuing preliminary injunctive relief except upon the strongest evidence.

Injunctive relief frequently is required to maintain the status quo pending resolution on the merits, and there is neither the time nor opportunity to develop a complete record. Nevertheless, a resolution of the issues surrounding the place restriction by this court based upon the existing record would be the equivalent of a decision on the merits, a task for which this court is ill suited. Accordingly, we remand this portion of the injunction to the trial court for proceedings on the merits, using our decision in *Bering v. Share, supra,* as guidance.

## II

■ TSUFL also challenges the content restriction in the preliminary injunction, which prohibited *all* oral or written use of the words "murder", "kill" and their derivatives in connection with physicians, staff, and patients of the Clinic. Unlike the content restriction in *Bering v. Share, supra,* the absolute ban upon all oral or written use of the proscribed language sweeps more broadly than necessary to effectuate the State's interests.

As explained by the Fifth Circuit Court of Appeals, "[a] law is overbroad if it 'does not aim specifically at evils within the allowable area of control . . . but sweeps within its ambit other activities that constitute an exercise' of First Amendment rights." *Beckerman v. Tupelo*, 664 F.2d 502, 507 (5th Cir. 1981) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97, 84 L. Ed. 1093, 60 S. Ct. 736 (1940)). In *Bering v. Share, supra,* we held that it was constitutionally permissible to restrict oral use of the proscribed words in the presence of young children at the picket site. We believe neither Const. art. 1, § 5 nor the First Amendment will tolerate further restrictions.

In *Stanley v. Georgia*, 394 U.S. 557, 564, 22 L. Ed. 2d 542, 89 S. Ct. 1243 (1969), the Court stated that the "right to receive information and ideas, regardless of their social worth . . . is fundamental to our free society." As we made clear in *Bering v. Share, supra,* the State may prohibit oral dissemination of the information to young children if necessary to prevent the recipient's harm. In this case, however, we find no compelling State interest in insulating passersby from the written messages on the picketers' signs. Because the content restriction is overly broad, we must strike it down as violative of Const. art. 1, § 5 and the First Amendment.

### III

TSUFL argues that it is entitled to attorney fees for quashing the wrongfully issued temporary restraining order. Given our decision in *Bering v. Share, supra,* and our ruling today to remand this case to the trial court, we believe attorney fees for this appeal should abide the outcome of the hearing on the merits. If, after taking additional evidence, the trial court concludes that a permanent injunction should not issue, the trial court should award petitioners their fees for prosecuting this appeal. On the other hand, if respondents prevail on the merits, petitioners' request for fees must be denied.

In sum, we reverse and remand for proceedings on the merits consistent with this opinion and *Bering v. Share,*

*supra,* dissolve the stay, and allow the fees question to abide a decision on the merits.

DOLLIVER, C.J., UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., and CUNNINGHAM, J. Pro Tem., concur.