# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JANE DOES 1 through 15 and JOHN DOES 1 through 15, victims of and witnesses to the June 5, 2014 Seattle Pacific University shooting and SEATTLE PACIFIC UNIVERSITY, a Washington nonprofit corporation,

Appellants,

v.

KING COUNTY, a legal subdivision of the state of Washington, CITY OF SEATTLE, a Washington municipal corporation, TRIBUNE BROADCASTING SEATTLE, LLC and its affiliates, d/b/a KCPQ-TV and Q13 FOX, a Delaware corporation, KIRO-TV, INC. and its affiliates, d/b/a KIRO NEWS and KIRO TV, a Delaware corporation, SINCLAIR SEATTLE LICENSEE, LLC, and its affiliates, d/b/a KOMO TV and KOMO 4, a Nevada corporation, KING BROADCASTING COMPANY and its affiliates, d/b/a KING 5 TELEVISION, a Washington corporation, ARTHUR WEST, a Washington resident, JOHN DOE MEDIA ORGANIZATIONS 1 through 100,

Respondents.

JANE DOES 1 through 15 and JOHN DOES 1 through 15, victims of and witnesses to the June 5, 2014 Seattle Pacific University shooting and SEATTLE PACIFIC UNIVERSITY, a Washington nonprofit corporation,

Appellants,

v.

No. 72159-3-I
(consolidated with No. 72198-4-I)

DIVISION ONE

PUBLISHED OPINION

(consolidated with Nos. 72898-9-I and 72899-7-I)

No. 72159-3-I / 2

KING COUNTY, a legal subdivision )
of the state of Washington, CITY OF )
SEATTLE, a Washington municipal )
corporation, TRIBUNE )
BROADCASTING SEATTLE, LLC and )
its affiliates, d/b/a KCPQ-TV and )
Q13 FOX, a Delaware corporation, )
KIRO-TV, INC. and its affiliates, d/b/a )
KIRO NEWS and KIRO TV, a Delaware )
corporation, SINCLAIR SEATTLE )
LICENSEE, LLC, and its affiliates, d/b/a )
KOMO TV and KOMO 4, a Nevada )
corporation, KING BROADCASTING )
COMPANY and its affiliates, d/b/a KING )
5 TELEVISION, a Washington )
corporation, ARTHUR WEST, a )
Washington resident, HEARST )
SEATTLE MEDIA, LLC, d/b/a )
SEATTLEPI.COM, a Delaware )
corporation, CABLE NEWS NETWORK, )
INC. d/b/a CNN, a Delaware corporation,)
JOHN DOE MEDIA ORGANIZATIONS )
1 through 100, )        FILED: December 28, 2015
                                    )
_____Respondents._____)

TRICKEY, J. — Seattle Pacific University security cameras captured events related to the tragic shootings on its campus on June 5, 2014. The University turned its cameras' surveillance footage over to the Seattle Police Department and the King County Prosecuting Attorney's Office. News media organizations and an individual made public records requests in which they sought disclosure of that surveillance footage in the possession of the police and prosecuting attorney. Certain students and the University objected to that disclosure.

On appeal, we must interpret Washington's Public Records Act (PRA), chapter 42.56 RCW, and determine whether it requires disclosure of the surveillance footage.

2

The trial court held that the PRA does require disclosure, subject to certain redactions. We agree and therefore affirm.

## FACTS

On June 5, 2014, a senseless tragedy occurred on the campus of Seattle Pacific University. The alleged acts, which are undisputed, are horrific. At approximately 3:30 p.m., Aaron Ybarra entered the campus armed with a double-barreled shotgun and a knife. He fired his shotgun at close range at a 19-year-old student, fatally wounding him. Pellets from the shotgun round struck another student who was standing nearby. This student managed to escape and survived. Ybarra then entered Otto Miller Hall. He pointed his shotgun at another student but did not fire. He shot a third student as she came down the stairs. This victim, though seriously wounded, also survived. As Ybarra began to reload his shotgun, a student disabled him using pepper spray. Soon after, a second student helped subdue Ybarra until law enforcement arrived.

Campus security cameras captured part of Ybarra's attack inside Otto Miller Hall. The University provided a copy of a three minute surveillance video to the Seattle Police Department (SPD) for use in the criminal investigation into the attack. Later, in response to a warrant, the University gave SPD 19 additional DVDs (digital video disc) of surveillance footage, including recordings from at least 30 cameras maintained by the University on its campus. The King County Prosecuting Attorney's Office (KCPAO), subsequently acquired this footage. Eventually, KCPAO charged Ybarra with a number of felony crimes.

The three minute surveillance video from June 5 shows Ybarra, the victims, and a number of witnesses at the time of the shooting. The other 19 DVDs contain some 20

hours of footage. They show Ybarra's activities on June 5 and an earlier visit he made to the campus on May 19. The June 5 footage shows, among other things, the response of law enforcement and fire department paramedics to the incident.

Subsequently, both the city of Seattle (City) and King County (County) received requests under the Public Records Act from commercial media outlets and from an individual named Arthur West. The requesters all sought to obtain copies of the University's security camera footage. The victims and witnesses objected to the release of the footage.

On June 24 and 25, the County and the City gave notice by letter that they intended to release the surveillance footage in response to the public records requests. Specifically, they gave notice that they intended to release, the three minute surveillance video from June 5 that "starts as defendant Aaron Ybarra enters the building and ends after [Ybarra] has been subdued by one male student with the assistance of a second male student."[1] However, both the County and the City explained that, because the students shown in the video had expressed a desire that their identities not be disclosed, the footage would be released with the faces of each students "pixelated" in order to redact their identities.

In response, on July 2, several unnamed students who were victims and witnesses in the surveillance footage (the Students), along with the University, filed a complaint for declaratory judgment and injunctive relief against the County, the City, the news media organizations, and Arthur West that the surveillance footage is exempt from disclosure under the PRA. They also moved for a temporary restraining order and an order to show

---

[1] Clerk's Papers (CP) at 73.

cause why a preliminary injunction should not issue.

The following day, a King County Superior Court commissioner granted the Students' and the University's motions for a temporary restraining order and order to show cause why a preliminary injunction should not issue. The commissioner ordered that the City and the County were enjoined from disclosing the three minute surveillance video and that the temporary restraining order would remain in effect pending the court's determination on an order to show cause why a preliminary injunction should not issue.

After a hearing, the superior court issued a memorandum opinion on July 22, in which it concluded that the Students and the University were not entitled to a preliminary injunction to prohibit the release of the three minute surveillance video, which, the court explained, was the only video at issue. In reaching this conclusion, the court made several determinations. It determined that the three minute video was a public record within the meaning of the PRA. It also determined that none of the four statutory exemptions proposed by the Students and the University applied to bar disclosure. These exemptions were the "victim or witness" exemption contained in RCW 42.56.240(2), the "privacy" exemption contained in RCW 42.56.050, the "law enforcement" exemption contained in RCW 42.56.240(1), and the "security" exemption contained in RCW 42.56.420(1).[2] Notwithstanding its ruling, however, the court extended the temporary injunction until July 25 "to permit the filing of a motion for discretionary review, should [the Students and the University] so desire."[3] It entered an order denying the Students and the University's motions and extending the temporary injunction.

The Students and the University filed notices of appeal and emergency motions to

---

[2] CP at 513-18.
[3] CP at 519.

prevent release of the three minute surveillance video pending review by this court.[4] On July 23, a commissioner of this court extended the temporary injunction.[5] Thereafter, following a hearing, the commissioner granted discretionary review and ordered that "the temporary stay preventing release of the three-minute surveillance videotape at issue in this matter shall remain in place until further order of this court."[6]

While the appeal of that order was pending, on October 23, SPD and KCPAO notified the University and the Students that the 19 additional DVDs would be released absent a court order to the contrary. As with the three minute surveillance video, KCPAO indicated its intent to "pixelate" the faces of the students who appeared in the videos.

The University and the Students brought separate motions to preliminarily enjoin the release of these videos. In the Students' motion, they requested that a specific form of redaction—a black box and not simply pixelation of faces—be ordered.

The court heard argument on the motions and reviewed the DVDs in camera. On December 15, the court entered an order and second memorandum opinion in which it denied the requests for a preliminary injunction. The court incorporated its earlier memorandum opinion of July 22 into the second memorandum opinion.

In response to the Students' request for black box redaction, the court denied the request as to the June 5 videos, but granted it as to a video from May 19. It explained that the June 5 videos "include the response of law enforcement and the paramedics, and it is not practical to black box the students without hiding the disclosable response of the

---

[4] Commissioner's Ruling Extending Stay Pending Appeal and Granting Discretionary Review, Jane Does 1-15, et al. v. King County, et al., No. 72159-3-I, at 2 (Wash. Ct. App. Aug. 15, 2014).
[5] Commissioner's Ruling at 2.
[6] Commissioner's Ruling at 12.

police and fire department."[7]  In contrast, it stated that the May 19 video depicts Ybarra planning his attack and "[t]here is nothing of significance that would be obliterated by a black box instead of pix[e]lation on this disc."[8]  The court also concluded that, as with the three minute video, the "security" exemption contained in RCW 42.56.420(1) did not apply to the other 19 DVDs.  Nor did the "privacy" exemption contained in RCW 42.56.240(1) apply.  The court ordered that the temporary injunction would remain in effect until lifted by the Court of Appeals or by order of the superior court.

Following this ruling, the University and the Students filed separate appeals with this court.  This court later consolidated these appeals with the cause number assigned to the matter upon which discretionary review was granted.

## ANALYSIS

The PRA mandates broad public disclosure of public records to safeguard the people's right to insist on remaining informed so that they may maintain control over the instruments of government they have created.  RCW 42.56.030.  "The PRA requires state and local agencies to disclose public records upon request, unless the record falls within a PRA exemption or other statutory exemption."  Gendler v. Batiste, 174 Wn.2d 244, 251, 274 P.3d 346 (2012).  Accordingly, the PRA is liberally construed and its exemptions narrowly construed to assure that the public interest is fully protected.  Fisher Broadcasting-Seattle TV LLC v. City of Seattle, 180 Wn.2d 515, 521, 326 P.3d 688 (2014).

The PRA specifically provides that examination of any public record may be enjoined if the superior court finds that such examination would clearly not be in the public

---

[7] CP at 1046.
[8] CP at 1046.

interest and would substantially and irreparably damage any person or vital governmental functions. RCW 42.56.540. This provision is not an exemption; rather, it is a procedural mechanism for seeking to enjoin release of a public record if it falls within a specific exemption found elsewhere in the PRA. Yakima County v. Yakima Herald-Republic, 170 Wn.2d 775, 807, 246 P.3d 768 (2011). It is premature for a court to consider the public interest and substantial/irreparable damage factors before determining whether an exemption applies. Franklin County Sheriff's Office v. Parmelee, 175 Wn.2d 476, 480-81, 285 P.3d 67 (2012). The party seeking to prevent disclosure has the burden to prove that the requested documents fall within the scope of an exemption. Dragonslayer, Inc. v. Wash. State Gambling Comm'n, 139 Wn. App. 433, 441, 161 P.3d 428 (2007).

An appellate court's review of a superior court's PRA decision is de novo. Nissen v. Pierce County, 183 Wn.2d 863, 872, 357 P.3d 45 (2015). Where the record consists only of affidavits, memoranda of law, and other documentary evidence, an appellate court stands in the same position as the trial court in reviewing agency actions challenged under the PRA. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 252, 884 P.2d 592 (1994).

### Preliminary Injunction Hearing

The University and the Students contend that the trial court improperly consolidated both the preliminary injunction hearings with a trial on the merits without giving the required notice to the parties under CR 65. We disagree.

To support their argument, the University and the Students rely on Northwest Gas Ass'n v. Washington Utilities and Transportation Commission, 141 Wn. App. 98, 168 P.3d

443 (2007) and <u>Ameriquest Mortgage Co. v. State Attorney General</u>, 148 Wn. App. 145, 199 P.3d 468 (2009).

In <u>Northwest Gas</u>, the trial court did not expressly inform the parties that it was consolidating the preliminary injunction hearing with a permanent injunction trial on the merits under CR 65(a)(2). Nevertheless, the trial court ordered the government agency to disclose the requested records. Division Two of this court reversed. It concluded that in ordering the disclosure of the records, "[T]he trial court essentially considered and finally resolved the merits." 141 Wn. App. at 114.

In <u>Ameriquest</u>, the trial court "similarly conflated the preliminary injunction hearing with a full hearing on the merits without providing prior notice to the parties." 148 Wn. App. at 156. There, the trial court had also ordered disclosure of the records sought.

Here, in contrast, the trial court did not—contrary to the University's contention— order disclosure of the three minute video following the first preliminary injunction hearing or the remaining 19 videos following the second preliminary injunction hearing. Rather, it concluded that the statutory exemptions did not apply and declined to grant a preliminary injunction in either instance. The trial court also affirmatively extended the temporary restraining order, thereby preventing the release of the videos. Unlike <u>Northwest Gas</u> and <u>Ameriquest</u>, the trial court's decisions did not constitute final resolutions on the merits.

Moreover, the trial court's decision was procedurally proper under PRA case law. The trial court recognized that its first task was to determine whether a specific statutory exemption to the PRA applies. Only then could it consider the issuance of an injunction under RCW 42.56.540. <u>Franklin County</u>, 175 Wn.2d at 480-81.

9

Public Records

The University next contends that the trial court erred when it concluded that the videos are "public records" under the PRA. The University argues that, because the majority of the surveillance footage does not show any government action, the videos are not public records. We conclude that they are.

We begin our analysis by considering whether the videos fall within the PRA statutory definition of "public record." Dragonslayer, 139 Wn. App. at 441. As defined by the legislature, "'Public record' includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010(3). In construing this definition, our Supreme Court has observed that "'public record' is defined very broadly, encompassing virtually any record related to the conduct of government." O'Neill v. City of Shoreline, 170 Wn.2d 138, 147, 240 P.3d 1149 (2010); see also Nissen, 183 Wn.2d at 880 ("This language casts a wide net."). "This broad construction is deliberate and meant to give the public access to information about every aspect of state and local government." Nissen, 183 Wn.2d at 874.

The University argues that the videos, for the most part, do not contain information relating to government conduct because the surveillance footage shows only minimal government action. RCW 42.56.010(3) does not, by its terms, impose such a requirement, and Washington courts have not interpreted the provision to so require. In Comaroto v. Pierce County Medical Examiner's Office, Division Two of this court concluded that a private suicide note was a public record because law enforcement

10

"gathered and temporarily retained the note before delivering it to the medical examiner's office (a governmental agency) to investigate and to determine the cause of . . . death (a government function)." 111 Wn. App. 69, 73-74, 43 P.3d 539 (2002).

In this matter, as in Comaroto, a government agency obtained privately generated information for the purpose of investigating a crime. RCW 42.56.010(3) does not, by its plain language, limit the definition of "[p]ublic record" to those showing only direct government action (e.g., a filmed traffic stop), but rather uses broad language to capture "information *relating* to the conduct of government or the performance of any governmental or proprietary function prepared."[9] We conclude that these surveillance videos contain information "relating" to government conduct. The trial court did not err.

## PRA Exemptions

The University and the Students next contend that certain PRA exemptions apply to the videos and that the trial court therefore erred in refusing to grant either motion for a preliminary injunction. These exemptions include the "victim or witness" exemption under RCW 42.56.240(2), the "investigative records" exemption under RCW 42.56.240(1), and the "security" exemption under RCW 42.56.420. Each exemption is addressed in turn below.

*"Victim or Witness" Exemption*

The parties do not appear to dispute that the "victim or witness" exemption applies. They do dispute, however, the proper scope of the exemption. The Students maintain that the trial court erred in ruling that redaction by means of pixelation was adequate to comply with the PRA. We disagree.

---

[9] (Emphasis added.)

The "victim or witness" exemption, in pertinent part, exempts the following from disclosure:

> Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies, other than the commission, if disclosure would endanger any person's life, physical safety, or property. If at the time a complaint is filed the complainant, victim, or witness indicates a desire for disclosure or nondisclosure, such desire shall govern.

RCW 42.56.240(2).

The Students have the burden of proof. <u>Ameriquest Mortg. Co. v. Office of Attorney Gen. of Wash.</u>, 177 Wn.2d 467, 486-87, 300 P.3d 799 (2013).

In this case, after the City and County received public records requests, they contacted the victims and witnesses to notify them that the three minute video from June 5 would be disclosed. However, in response to the stated desire of the victims and witnesses that their identities not be disclosed, the City and County informed them that the video would be released with their faces redacted by use of pixelation. The Students then filed suit in an attempt to prevent the _entire_ three minute video from being disclosed. The Students did not, however, argue that the method of redaction should instead have been use of a "black box."[10]

The trial court properly rejected the Students' argument that the entire three minute video should not be disclosed. Washington courts have rejected attempts to withhold a record entirely where the record could be disclosed subject to redaction. <u>See, e.g.</u>, <u>Bainbridge Island Police Guild v. City of Puyallup</u>, 172 Wn.2d 398, 416, 259 P.3d 190 (2001) ("The trial court erred by exempting the entire [record], rather than producing the report with only [the officer's] identity redacted.").

---

[10] CP at 1043.

12

Whereas the Students did not raise the issue of using an alternative method of redaction—that is, use of a "black box" rather than pixelation—with regard to the three minute video, the Students did ask the trial court to order black box redaction with regard to the remaining 19 videos.[11] After conducting *in camera* reviews of the videos, the trial court denied the Students' request for black box redactions as to the June 5 videos, which included depictions of the response of law enforcement and paramedics. The court reasoned that it would not be practical to use a black box to obscure the students without concealing the response of the police and fire department.

However, the court granted the Students' request for black box redactions for "Disc 621," which was filmed on May 19, the date on which Ybarra appeared on campus to plan his attack.[12] The court found that there was nothing of significance in the video that would be obscured by a black box instead of pixelation, and so the higher level of protection was warranted.

The Students argue that the use of pixelation was insufficient to protect disclosure of their identities. Specifically, they assert that merely pixelating their faces does not redact all identifying information such as clothing and body types. We disagree. Pixelation for the June 5 videos sufficiently protects against disclosure of identity. Further, if requested material contains both exempt and non-exempt material, the exempt material may be redacted but the remaining material must be disclosed. RCW 42.56.210(1); Amren v. City of Kalama, 131 Wn.2d 25, 32, 929 P.2d 389 (1997). Because the trial court reasoned that use of black boxes would, in nearly every instance, conceal or otherwise block the response of the police and fire department, the court did not err.

---

[11] CP at 1043.
[12] CP at 1046.

*"Investigative Records" Exemption*

The "investigative records" exemption, which is contained in RCW 42.56.240(1), contains two prongs known colloquially as "privacy" and "law enforcement." The Students contend that the trial court erred by not applying the "privacy" prong of the investigative records exemption. Both the Students and the University argue that the trial court erred by not applying the "law enforcement" prong. We conclude that the trial court did not err in refusing to apply the exemption.

*"Privacy" Prong*

The "privacy" prong exempts from disclosure "[s]pecific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential . . . for the protection of any person's right to privacy." RCW 42.56.240(1). A party asserting a privacy-based PRA exemption must prove that disclosure is both "highly offensive to a reasonable person" and "not of legitimate concern to the public." RCW 42.56.050.

Recently, our Supreme Court, in examining the Restatement (Second) of Torts § 652(D) (1977), explained that "the PRA will not protect everything that an individual would prefer to keep private." Predisik v. Spokane Sch. Dist. No. 81, 182 Wn.2d 896, 904-05, 346 P.3d 737 (2015). Because "[t]he PRA's 'right to privacy' is narrower," the court observed, "[i]ndividuals have a privacy right under the PRA only in the types of 'private' facts fairly comparable to those shown in the Restatement." Predisik, 182 Wn.2d at 905. The pertinent section of the Restatement is as follows:

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps

entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget.

RESTATEMENT (SECOND) OF TORTS § 652(D).

The surveillance footage at issue here is not comparable to the type of private facts addressed by the Restatement. The videos themselves were not taken in a private place such as a dorm room; they instead captured footage of areas on an urban university campus. Under these circumstances, the Students do not have a protected right to privacy under the PRA. The trial court did not err.

*"Law Enforcement" Prong*

The "law enforcement" prong exempts from disclosure "[s]pecific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies" when nondisclosure is "essential to effective law enforcement." RCW 42.56.240(1). Records relating to crime investigations are "presumptively disclosable upon request" where, as in this case, a suspect has been arrested and the matter has been referred to the prosecutor for a charging decision. Cowles Pub. Co. v. City of Spokane, 139 Wn.2d 472, 481, 987 P.2d 620 (1999). In order to overcome this presumption, the University and the Students must provide a "truly persuasive reason as to why disclosure" would harm the SPD's future law enforcement efforts. Ameriquest Mortg., 177 Wn.2d at 492.

The University fails to offer a persuasive reason as to why disclosure would be harmful in this case. It makes a broad policy argument that there is the possibility that disclosure will dissuade it from voluntarily cooperating with law enforcement. Our

15

Supreme Court recently rejected a similar argument in Ameriquest Mortgage. 177 Wn.2d 467, 492-93, 300 P.3d 799 (2013). The University also argues that the security system is essential to its law enforcement efforts on campus. But the exemption only applies to the agencies enumerated in the statute. RCW 42.56.240(1). Finally, the University relies on Fischer v. Washington State Department of Corrections, 160 Wn. App. 722, 728, 254 P.3d 824 (2011), in which nondisclosure of prison surveillance videos was found "essential to effective law enforcement." This was so because concealing the security system was "critical to its effectiveness *in the specific setting of a prison.*" Fischer, 160 Wn. App. at 728 (emphasis added). The University fails to explain why the rationale in Fischer should be extended to the facts in this matter.

The Students also fail to offer a persuasive reason as to why disclosure would be harmful. They argue that disclosure with their faces merely pixelated will impair law enforcement by making victims and witnesses less willing to come forward or cooperate with law enforcement officers—that is, disclosure will have a "chilling effect" moving forward.[13] The Supreme Court, however, has made clear that "[a] general contention of chilling future witnesses is not enough to exempt disclosure." Sargent v. Seattle Police Dep't, 179 Wn.2d 376, 395, 314 P.3d 1093 (2013). Rather, the Students were obligated "to come forward with specific evidence of chilled witnesses or other evidence of impeded law enforcement." Sargent, 179 Wn.2d at 395. They have not done so here.

*"Security" Exemption*

The University next contends that the trial court erred when it declined to apply the PRA's "security" exemption. We disagree.

---

[13] Students' Appellants' Br. at 20.

The "security" exemption exempts from disclosure the following public records:

(1) Those portions of records assembled, prepared, or maintained to prevent, mitigate, or respond to criminal terrorist acts, which are acts that significantly disrupt the conduct of government or of the general civilian population . . . and that manifest an extreme indifferent to human life, *the public disclosure of which would have a substantial likelihood of threatening public safety*, consisting of:

    (a) Specific and unique vulnerability assessments or specific and unique response or deployment plans, including compiled underlying data collected in preparation of or essential to the assessments, or to the response or deployment plans.

RCW 42.56.420 (emphasis added).

The University's burden was to show that public disclosure of the videos would have a substantial likelihood of threatening public safety. It failed to meet this burden. The University's argument that disclosure of the videos could enable future individuals to successfully evade its surveillance security system is altogether speculative. The same is true of the University's argument regarding "copycat" crimes.[14] In view of this, we conclude that the trial court did not err when it declined to apply the "security" exemption.

Affirmed.

*Trickey, J*

WE CONCUR:

*Appelwick, J*                    *Becker, J*

---

[14] University's Appellant's Br. at 27.