# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 925, a labor organization, | ) ) ) | No. 76630-9-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| THE UNIVERSITY OF WASHINGTON, an agency of the State of Washington, | ) ) ) | |
| Respondent, | ) ) | |
| FREEDOM FOUNDATION, an organization, | ) ) ) | |
| Appellant. | ) ) | FILED: June 11, 2018 |
| | ) | |

APPELWICK, C.J. — The Freedom Foundation sent a PRA request to UW, seeking records associated with union organizing created by, received by, or in the possession of four named UW employees and specified e-mail addresses. SEIU 925 filed a complaint seeking to enjoin UW from releasing the records. The superior court concluded that the records at issue are not "public records" under the PRA, because they were not prepared, owned, used, or retained within the scope of employment. We affirm.

FACTS

The Parties

The Freedom Foundation (Foundation) is a non-profit organization that "seeks to promote individual liberty, free enterprise, and limited accountable government." "Part of its mission is to pursue governmental transparency and accountability."

The University of Washington (UW) is a public four year institution of higher education, an agency of the State of Washington, and has campuses in Tacoma, Bothell, and Seattle.

Service Employees International Union Local 925 (SEIU 925) is a labor organization representing public and private sector workers in Washington State. Purposes of SEIU 925 include organizing faculty at institutions of higher education in Washington State and providing representation as appropriate to its members and the individuals the union represents. SEIU 925 has worked with UW faculty in efforts to organize a union under chapter 41.76 RCW, which provides collective bargaining for faculty at public four year institutions of higher education.

The Foundation's PRA Request

In December 2015, the Foundation submitted a request under the Public Records Act (PRA), chapter 42.56 RCW, to UW. It requested all documents, e-mails, or other records created by, received by, or in the possession of UW faculty/employees Amy Hagopian, Robert Woods, James Liner, or Aaron Katz that contained specified terms, including "Freedom Foundation," "SEIU," "Union," and others. The request also sought e-mails sent to or received by the four named UW

faculty members from the domain names "seiu925.org" and "uwfacultyforward.org." And, it requested all e-mails sent from and received by aaup@u.washington.edu.[1] The Foundation's stated purpose of the request was "to ensure accountability and transparency among government employees using government-issued e-mail addresses."

After receiving the PRA request, the UW Office of Public Records and Open Public Meetings (OPR) asked the named professors for responsive records. Professor Robert Wood, one of the named faculty members in the Foundation's request, sent records to OPR. OPR reviewed the records and "was unable to determine that the records were not public records." OPR notified Wood that the records would be released, unless he sought a court order by April 26, 2018 preventing their release. The proposed release, records provided only by Wood, was 3913 pages of e-mails and attachments, the "vast majority" of which were e-mails sent to or from Wood's UW e-mail address, or to or from the AAUP listserver e-mail account.

---

[1] The UW chapter of the national nonprofit organization, the American Association of University Professors (AAUP), uses the UW e-mail account, aaup@u.washington.edu. That account operates an e-mail "listserver" (distributes messages to an e-mail subscriber list) entitled "Faculty Issues and Concerns." The mission of the UW chapter of AAUP is " 'to advance academic freedom and shared governance; to define fundamental professional values and standards for higher education; to promote the economic security and working conditions of all categories of faculty, academic professionals, graduate students, post-doctoral fellows, and all those engaged in teaching and research in higher education; to develop the standards and procedures that maintain quality in education; to help the higher education community organize to make our goals a reality; and to ensure higher education's contribution to the common good.' "

Complaint and Subsequent Procedural History

On April 25, 2016, SEIU 925 filed a complaint for declaratory judgment and injunctive relief, seeking to enjoin UW from releasing the records. On the same day, SEIU 925 also moved for a temporary restraining order (TRO) and preliminary injunction to enjoin UW from releasing the records to the Foundation. Based on a proposal by the Foundation, the parties agreed that SEIU 925 would not seek a TRO and instead would argue the case at a preliminary injunction hearing. The Foundation agreed not to seek disclosure of the requested records and agreed to waive claims against the University for penalties and attorney fees for the period until the hearing.

On June 10, 2016, the trial court held a hearing on SEIU 925's motion for a preliminary injunction and entered a TRO, enjoining the release of records, except those identified as "public records." The order also directed SEIU 925 on or before July 6 "to show by affidavit cataloging and describing with sufficient particularity as to the status of the records as public or not public records."

In compliance with the trial court's order, SEIU 925 catalogued the documents at issue, identifying 102 pages of public records, and placing the remaining records into categories. UW sent the 102 pages of identified public records to the Foundation.

On August 5, 2016, the trial court held a second preliminary injunction hearing. The court entered a preliminary injunction, finding the documents identified as nonpublic records were not "public records" subject to disclosure. In its written order filed on September 23, the trial court found that SEIU 925 had

standing to seek injunctive relief. Further, it found that the records at issue "were not created within the scope of the employee's employment and therefore are not public records." And, it found that SEIU 925 demonstrated a likelihood of success on the merits of their claims for injunctive relief:

> (1) [SEIU 925] has established a clear legal or equitable right to nondisclosure of those parts of [the records] that have not already been disclosed as public records because they contain personal and private emails [sic] unrelated to the scope of Professor Robert Wood's employment at UW and cannot be categorized as public records; (2) a well-grounded fear of immediate invasion of that right by the disclosure of those records, and that (3) the release of those records will result in immediate, actual and substantial injury to [SEIU 925].

On October 4, 2016, the Foundation filed a motion for reconsideration of the injunction. On October 12, the trial court denied the Foundation's motion.

On February 24, 2017, SEIU 925 filed a motion for summary judgment and permanent injunction. On March 27, 2017, the trial court entered a permanent injunction enjoining release of the documents at issue, finding that they were "not public records as defined in RCW 42.56.010(3) of the PRA."

On March 27, 2017, the Foundation appealed the order granting the TRO, the order granting SEIU's motion for preliminary injunction, the order denying Foundation's motion for reconsideration,[2] and the order granting SEIU's motion for summary judgment and permanent injunction. On April 3, 2017, SEIU filed a

---

[2] The Foundation included the trial court's order denying its motion for reconsideration in its notice of appeal, but does not assign error and it does not address this issue in its brief. Therefore it is waived, and we do not address it. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (party waives assignment of error when it does not argue the issue in its opening brief).

5

motion to change trial date and for a stay of proceedings, pending the outcome of the appeal to this court. On April 7, 2017, the Foundation filed a combined motion to strike SEIU's motion and motion for sanctions, asserting that the trial court no longer had jurisdiction. The trial court denied the Foundation's motion to strike and for sanctions, and granted SEIU 925's motion to change trial date and for a stay of proceedings, staying the matter and continuing the trial until October 23. The Foundation amended its appeal, appealing the order denying its motion to strike and for sanctions and the order granting SEIU's motion to change trial date and stay proceedings.

## DISCUSSION

The Foundation argues that the trial court erred in (1) granting a permanent injunction, (2) granting a preliminary injunction, and (3) granting a TRO. It also argues that the trial court abused its discretion in granting SEIU's 925 motion to change trial date and stay proceedings and denying its motion to strike and motion for sanctions.

I.  The PRA

The PRA mandates the broad disclosure of public records. Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Under RCW 42.56.070(1), a government agency must disclose public records upon request unless the records fall within the specific exemptions of the PRA or other statute that exempts or prohibits disclosure of specific information or records. Ameriquest Mortg. Co. v. Office of Att'y Gen., 177 Wn.2d 467, 485-86, 300 P.3d 799 (2013). The exemptions in the PRA are intended to exempt from public

6

inspection those categories of public records most capable of causing substantial damage to the privacy rights of citizens or damage to vital functions of government. Id. at 486.

The party seeking to prevent disclosure bears the burden of establishing that an exemption applies. Id. If it is a party besides an agency that is seeking to prevent disclosure, then that party must seek an injunction. Id. at 487; RCW 42.56.540. In such a case, the party must prove (1) that the record in question specifically pertains to that party, (2) that an exemption applies, and (3) that the disclosure would not be in the public interest and would substantially and irreparably harm that party or a vital government function. Ameriquest, 177 Wn.2d at 487. Courts construe exemptions narrowly to allow the PRA's purpose of open government to prevail where possible. Id.; RCW 42.56.030.

This court reviews challenges to an agency action under the PRA de novo. RCW 42.56.550(3); Resident Action Council, 177 Wn.2d at 428. Appellate courts stand in the shoes of the trial court when reviewing declarations, memoranda of law, and other documentary evidence. Ameriquest, 177 Wn.2d at 478.

A. Permanent Injunction

The Foundation argues that the trial court erroneously granted a permanent injunction for three reasons. First, it argues that SEIU 925 lacks standing. Second, it asserts that the UW e-mails qualify as public records, because the e-mails "clearly relate to the conduct of government and the performance of governmental and proprietary functions." Third, it claims that, if there was any ambiguity as to

whether the e-mails qualified as public records, the PRA requires that ambiguities be construed in favor of disclosure.

### 1. Standing

The Foundation asserts that SEIU 925 lacks standing, because it relies on associational standing through Wood, but at the same time its primary argument harms Wood and places him in legal jeopardy. Citing Hunt v. Wash. State Apple Adver. Comm'n., 432 U.S. 333, 342-43, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977), Save a Valuable Env't v. City of Bothell, 89 Wn.2d 862, 867, 576 P.2d 401 (1978), and Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports, 103 Wn. App. 764, 768, 14 P.3d 193 (2000) (Firefighters I), aff'd by, 146 Wn.2d 207, 45 P.3d 186, 50 P.3d 618 (2002) (Firefighters II), it argues that a party relying on associational standing "cannot conduct litigation in a way that harms the interests of those it claims to represent."

None of these cases stand for that principle. In Hunt, the United States Supreme Court held that the Washington Apple Advertising Commission had standing to challenge a North Carolina statute regulating the labeling of apples. 432 U.S. at 335, 345. In doing so the Court recognized,

> An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Id. at 343. The Court focused on the harm the North Carolina statute caused the apple growers, and not on any potential harm from litigation. Id. at 343-44.

Similarly in Save, our Supreme Court held that a nonprofit corporation or association has standing where it shows that one or more of its members are specifically injured by a government action. 89 Wn.2d at 867. And, the court in Firefighters II used the same test for associational standing recognized in Hunt. 146 Wn.2d t 213-14. On the third factor, the court stated, "Monetary damages are distinguishable from injunctive relief, in that injunctive relief generally benefits every member of an employee association equally whereas the amount of monetary damages an employee suffers may vary from employee to employee." Id. at 214.

Under the test for associational standing, SEIU 925 has standing to bring this action on behalf of Wood. First, Wood would have standing to sue in his own right, as many of the documents at issue are his own records. Second, SEIU 925 seeks to protect records germane to its purpose of organizing faculty for the purposes of collective bargaining. Third, the claim asserted does not require Wood's participation, as UW acknowledged. Moreover, as the court observed in Firefighters II, the injunction would benefit all of SEIU 925's members that would be potentially affected by the disclosure of records.

SEIU 925 also brought this action on its own behalf. In its order granting the permanent injunction, the trial court concluded,

> SEIU 925 has standing in this matter to seek injunctive relief under [t]he PRA as a party to whom public records held by a public agency may pertain and under chapter 7.40 RCW as a party whose rights may be affected by the release to the public of non-public records.

The trial court did not err.

## 2. Public Records

The Foundation argues next that the trial court erred in ruling that the e-mails at issue did not qualify as public records under the PRA. It asserts that, because the e-mails are held by an agency and "not purely personal," a strong presumption exists that they relate to government conduct or a governmental or proprietary function. Citing RCW 42.56.010(3), the Foundation argues, "Records that contain information about public-sector union organizing or public faculty issues and concerns clearly implicate government conduct and governmental proprietary functions." The Foundation then gives "four reasons" why the e-mails relate to the conduct of government or the performance of any governmental or proprietary function, and therefore meet the definition of "public records."

Under the PRA, a " 'public record' includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010. The parties here dispute the second element: whether the e-mails "contain . . . information relating the conduct of government or the performance of any governmental or proprietary function." Id.

"Public record" is defined very broadly, encompassing virtually any record related to the conduct of government. Does v. King County, 192 Wn. App. 10, 22, 366 P.3d 936 (2015). This broad construction is deliberate and meant to give the public access to information about every aspect of state and local government. Id. In Oliver v. Harborview Medical Center, 94 Wn.2d 559, 566, 618 P.2d 76 (1980),

10

the court held that medical records of a patient treated at a public hospital were public records. The court reasoned that the records contained information of a public nature, "i.e., administration of health care services, facility availability, use and care, methods of diagnosis, analysis, treatment and costs, all of which . . . relate to the performance of a governmental or proprietary function." Id. In Tiberino v. Spokane County, 103 Wn. App. 680, 687-88, 13 P.3d 1104 (2000), the court held that personal e-mails sent from Tiberino's county-owned computer were public records because the county printed the e-mails in preparation for litigation over her termination, a proprietary function.

In Nissen v. Pierce County, 183 Wn.2d 863, 869, 357 P.3d 45 (2015), our Supreme Court held that text messages sent and received by a public employee in the employee's official capacity are public records of the employer, even if the employee uses a private cell phone. Of particular relevance to our case, the Nissen court stated,

> For information to be a public record, an employee must prepare, own, use, or retain it within the scope of employment. An employee's communication is "within the scope of employment" only when the job requires it, the employer directs it, or it furthers the employer's interests. This limits the reach of the PRA to records related to the employee's public responsibilities.

Id. at 878-79 (quoting Greene v. St. Paul-Mercury Indem. Co., 51 Wn.2d 569, 573, 320 P.2d 311 (1958). Thus, whether an agency employee's record is subject to disclosure hinges on if the record was prepared, owned, used, or retained within the scope of employment. West v. Vermillion, 196 Wn. App. 627, 641, 384 P.3d 634 (2016).

11

The facts of this case contrast with those in Nissen, but the court's analysis is highly relevant to our inquiry. In Nissen, the records were communications sent and received on a private device, but were within the employee's scope of employment. 183 Wn.2d at 869. Here, the records at issue are predominantly e-mails that UW employee, Wood, created and/or retained on servers owned and operated by UW, a state agency, through his use of UW e-mail accounts. Although Wood used the agency's server, we must determine whether he created the records within his scope of employment.

The Foundation's "four reasons" for why the e-mails relate to the conduct of government or the performance of a governmental or proprietary function, and therefore meet the definition of "public records," are essentially one argument. First, it claims that the e-mails "necessarily relate to government employment" because they contain information "related to concerns about public employment and efforts at labor organizing." Second, it asserts that the public university faculty members' efforts to organize relate to the provision of public education, which is a government function. Third, it argues that "records containing information about public-sector labor organizing relate to a proprietary function of the government." Fourth, it states that records with information that will affect state budgets and financing relate to government conduct. These "four reasons" all fundamentally assert that employees' efforts to organize and address faculty concerns relate to a government function or conduct.

An employee's communication is within the scope of employment only when the job requires it, the employer directs it, or it furthers the employer's interests.

12

Nissen, 183 Wn.2d at 878-79. "[E]mployees are 'agent[s] employed by [an employer] to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the [employer]." Kamla v. Space Needle Corp., 147 Wn.2d 114, 119, 52 P.3d 472 (2002) (alterations in original) (quoting RESTATEMENT (SECOND) OF AGENCY § 2(2) (1958)).

Actions undertaken within the scope of employment are those that the employer has the right to control. But, laws such as the Educational Employment Relations Act, chapter 41.59 RCW, and the Personnel System Reform Act of 2002, chapter 41.80 RCW, make it an unfair labor practice for employers to try to interfere with or control employees' union activities. E.g., RCW 41.59.140; RCW 41.80.110. UW is prohibited from controlling or directing employees' union activity. RCW 41.76.050(1)(a) ("It is an unfair labor practice for a an employer to[] interfere with, restrain, or coerce faculty members in the exercise of their rights guaranteed by this chapter."). Further, the employees' communications do not fall within the scope of their employment, even if in the future, these efforts affect appointment, promotion, evaluation, tenure, or state budgets, as the Foundation proposes. Documents relating to faculty organizing and addressing faculty concerns are not within the scope of employment, do not relate to the UW's conduct of government or the performance of government functions, and thus are not "public records" subject to disclosure.

13

### 3. Ambiguity

Finally, the Foundation argues that even if it was ambiguous that the e-mails qualified as public records, the trial court erred in not resolving the ambiguity in favor of disclosure. The text of the PRA and our case law is clear that courts are to liberally construe the PRA in favor of disclosure and narrowly construe its exemptions. RCW 42.56.030; see, e.g., John Doe A v. Wash. State Patrol, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). But, the PRA's definition of "public record" requires that the record relate to the conduct of government or the performance of a governmental or proprietary function. RCW 42.56.010. And, under Nissen, for information to be a public record, an employee must prepare, own, use, or retain it within the scope of employment. 183 Wn.2d at 878-79. That did not occur here.

The trial court did not err in concluding that the records at issue are not public records under the PRA. It did not err in granting SEIU 925's motion for a permanent injunction.

### B. Preliminary Injunction

The Foundation next argues that the trial court erroneously granted a preliminary injunction on August 5, 2016. It argues that the trial court erred in relying on Nissen, asserting that the "scope of employment test" in that case only applies when records are on an employee's private devices or accounts.

In general, a party in a PRA case can obtain a TRO or a preliminary injunction before establishing a right to a permanent injunction. SEIU Healthcare 775NW v. Dep't of Soc. & Health Servs., 193 Wn. App. 377, 392, 377 P.3d 214, review denied, 186 Wn.2d 1016, 380 P.3d 502 (2016). A TRO and a preliminary

injunction both are designed to preserve the status quo until the trial court can conduct a full hearing on the merits. Id. At a preliminary injunction hearing, the trial court does not need to resolve the merits of the issues for permanent injunctive relief. Id. Instead, the trial court considers only the likelihood that the moving party ultimately will prevail at a trial on the merits. Id. at 392-93. One who seeks relief by temporary or permanent injunction must show (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. Fed. Way Family Physicians, Inc. v. Tacoma Stands Up for Life, 106 Wn.2d 261, 265, 721 P.2d 946 (1986). This court reviews injunctions issued under the PRA de novo. SEIU Healthcare, 193 Wn. App. at 392.

Following the standard of a preliminary injunction, the trial court found that SEIU 925 "ha[d] demonstrated a likelihood of success on the merits of their claims for injunctive relief." In the order granting SEIU 925's motion for preliminary injunction, the trial court concluded that the records were not created within the scope of the employee's employment and therefore are not public records. The order further stated,

> (1) Petitioner has established a clear legal or equitable right to nondisclosure of those parts of [the records] that have not already been disclosed as public records because they contain personal and private emails [sic] unrelated to the scope of Professor Robert Wood's employment at UW and cannot be categorized as public records; (2) a well-grounded fear of immediate invasion of that right by the disclosure of those records, and that (3) the release of those records will result in immediate, actual and substantial injury to Petitioner.

15

The Foundation attacks the trial court's legal conclusion that the scope of employment test applies to the records at issue here. The Foundation asks this court to find that public records under the PRA do not have to be created within the scope of an employee's employment, as long as the records are on the public employer's device.

As the Foundation points out, Nissen extended the PRA's reach to employee's private devices. 183 Wn.2d at 877. The court stated,

> [W]e find nothing in the text or purpose of the PRA . . . that only work product made using agency property can be a public record. To the contrary, the PRA is explicit that information qualifies as a public record "regardless of [its] physical form or characteristics."

Id. (quoting RCW 42.56.010(3). But, the Nissen court did not expressly limit the scope of employment test to private devices. And, it does not follow logically under the Nissen analysis that communications on the employer's devices are necessarily always public records. Such an inference would conflict with the distinction drawn in Tiberino. See 103 Wn. App. at 683-4, 688 (personal e-mails were public records not because they were on employer's computer, but because the county printed the personal e-mails in preparation for litigation over Tiberino's termination because of her personal use of e-mail). The trial court did not err in granting a preliminary injunction.

C. Temporary Restraining Order

The Foundation also asserts that the trial court erred in granting a "sua sponte" temporary restraining order on June 10, 2016. It asserts that the trial court's TRO was "standardless."

One who seeks relief by temporary or permanent injunction must show (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. Fed. Way Family Physicians, 106 Wn.2d at 265. To answer the question of whether a party has a clear right, the trial court must analyze the moving party's likelihood of prevailing on the merits. Id. In making this determination, the court does not adjudicate the ultimate rights of the parties in the lawsuit. Id.

On June 10, the trial court entered the TRO, enjoining the release of records, except those identified as "public records" and directed SEIU 925 to set a hearing on or before July 6, 2016. In its oral ruling, the court stated,

> I'm treating—I'm treating this as a temporary injunction rather than a full-blown preliminary injunction because I'm only granting the temporary relief to preserve the status quo so they can do the assessment of the documents. And so, I—I don't feel comfortable making those findings right now on this record alone.

The parties had stipulated to a TRO pending the hearing on the preliminary injunction. It was at that hearing the trial court entered the challenged TRO. The effect was the same as if a continuance was ordered by the trial court on its own motion. The purpose of the TRO was clear, to preserve the status quo while awaiting additional information it felt was necessary to resolution of the motion for the preliminary injunction. Preserving the status quo is an appropriate consideration where the decision of the court is delayed.

The Foundation argues this delay via TRO was impermissible under Fed. Way Family Physicians. There, the court refers to the trial court order

17

interchangeably as a preliminary injunction and a TRO. See Fed. Way Family Physicians, 106 Wn.2d at 267-68. The trial court failed to state in the preliminary injunction that respondents were likely to prevail on the merits. Id. at 265. However, the court did not strike the injunction and remand because the trial court made an incomplete order. Id. at 267. Instead, it did so because it found that there was not substantial evidence before the trial court for it to conclude that the respondents had a well-grounded fear of invasion of a legal right. See id. at 265-67. Here, this court must determine whether there was substantial evidence before the trial court when it entered the TRO.

Even assuming the TRO issued in Fed. Way Family Physicians is comparable to the TRO at issue here, the result is not the same. Before entering the TRO, the trial court reviewed declarations SEIU 925 filed in support of its motion for a temporary restraining order, including one from Wood, as well as declarations from Patricia Flores, Brooke Lather, and others. In his declaration, Wood refers to the union organizing in the documents. In their declarations, SEIU 925 organizers Patricia Flores and Brooke Lather put the e-mails into categories. Those categories include (1) those about union organizing, (2) postings to the AAUP UW chapter listserver, (3) e-mails between Wood and others not related to UW business, and (4) e-mails that mention SEIU 925 specifically. The trial court also reviewed declarations from the Freedom Foundation and Perry Tapper, a compliance officer in the OPR at UW.

Based on these declarations, there was substantial evidence for the trial court to conclude that SEIU 925 had a well-grounded fear of an invasion of its legal

18

right of nondisclosure of nonpublic records. It was reasonable for the court to conclude that the Foundation would not suffer harm as a result of a temporary delay in the release of any material that is subject to the PRA. While the trial court should have made a more complete order, any error in not doing so was harmless.

The trial court did not err in entering the TRO.

## II. SEIU 925's Motion to Stay and the Foundation's Motion for Sanctions

Finally, the Foundation argues that the court abused its discretion in granting SEIU 925's motion to change trial date and stay proceedings, and in denying its motions to strike and for sanctions.

### A. Motion to Change Trial Date and Stay Proceedings

The Foundation argues that the trial court no longer had jurisdiction to grant SEIU 925's motion to change trial date and stay proceedings, because the Foundation had already filed a notice of appeal, on March 27, 2016, of the permanent injunction.

A court's determination on a motion to stay proceedings is discretionary, and is reviewed only for abuse of discretion. King v. Olympic Pipeline Co., 104 Wn. App. 338, 348, 16 P.3d 45 (2000). A trial court does not abuse its discretion unless its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Eugster v. City of Spokane, 110 Wn. App. 212, 231, 39 P.3d 380 (2002).

RAP 7.2(a) provides that after review is accepted by the appellate court, a trial court has authority to act only to the extent provided in RAP 7.2, unless the appellate court limits or expands that authority as provided in RAP 8.3. RAP 7.2(e)

requires a party to seek the appellate court's permission before making a determination that would change a decision currently under review.

SEIU 925 states that, after the Foundation appealed the order entering the permanent injunction, it was under the impression that the trial scheduled to begin April 24, 2017 would go forward, "at least as to the [unfair labor practice] claims." With this understanding, SEIU 925 filed a motion on April 3, requesting that the trial court change the trial date or stay proceedings pending the outcome of this appeal.

In its initial complaint, in addition to injunctive relief, SEIU 925 also sought "an order finding that UW committed an unfair labor practice" in stating that it intended to release material from the identified records at issue. In its order granting a permanent injunction enjoining UW from release the nonpublic records, the trial court did not address SEIU 925's claim against UW. For purposes of the appeal, the order granting the injunction was final for one party, the Foundation, but it had not addressed the unfair labor practices claim against UW.[3]

RAP 7.2 and 8.3 are intended to keep a case from developing branches in the absence of an appropriate order of the appellate court. Burton v. Clark County, 91 Wn. App. 505, 513 n.9, 958 P.2d 343 (1998). The trial court's decision to stay was merely a procedural decision to preserve the posture of the case. On these facts, the trial court's stay of proceedings pending the outcome of this appeal did not run afoul of RAP 7.2.

_____

[3] That claim asserted a potential second basis for denial of the disclosure of the records sought. Even if the Foundation succeeded in this appeal, remand for consideration of the remaining claim would have been required.

20

B. Motions to Strike and to Impose Sanctions

The Foundation also asserts that the trial court abused its discretion in denying its motion for sanctions, because SEIU 925 filed its motion "even though the Foundation had repeatedly informed it that the Superior Court lacked jurisdiction."

CR 11 is intended to address filings not grounded in fact and not warranted by law, or filed for an improper purpose. Wood v. Battle Ground Sch. Dist., 107 Wn. App. 550, 574, 27 P.3d 1208 (2001). The decision to impose sanctions under CR 11 is vested within the sound discretion of the trial court. Eller v. E. Sprague Motors & R.V.'s, Inc., 159 Wn. App. 180, 189, 244 P.3d 447 (2010). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. Id.

After the court entered the permanent injunction, SEIU 925's spoke with the Foundation and UW about its understanding that the unfair labor practice claim was still intact, before filing its motion to change trial date. On this record, it does not appear that SEIU 925 filed a baseless motion.

The trial court did not abuse its discretion in denying the Foundation's motion for sanctions.

We affirm.

Appelwick, C.J.

WE CONCUR:

Cox, J.

21